John Paul **WILLIAMS** and Frederick Austin Cuff, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 17979.

United States Court of Appeals Ninth Circuit.

Oct. 3, 1962.

Rehearing Denied Nov. 8, 1962.

Russell E. Parsons, Los Angeles, Cal., for appellant John Paul Williams.

Theodore A. Cohen, Los Angeles, Cal., for appellant Frederick Austin Cuff.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, and John A. Mitchell, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and HAMLIN, Circuit Judges, and SOLOMON, District Judge.

## PER CURIAM.

Nonappealing codefendant Miller was charged with transporting a stolen Ford Thunderbird automobile from Los Angeles, California, to Las Vegas, Nevada—across a state line—and hence a violation of 18 U.S.C. § 2312. The two appealing defendants, Williams and Cuff, were named as aiders and abettors of the alleged crime. 18 U.S.C. § 2.

Trial was had before the court without a jury. The defendant Miller, early in the trial, changed his plea to guilty. The trial proceeded as to the two remaining defendants. Defendant Miller, before his sentence on his guilty plea, testified for the government and against Williams and Cuff. Jurisdiction rests here on appeal. 28 U.S.C. § 1291.

Two errors are alleged on this appeal:

1. Defendant Miller was coerced and his testimony tainted and colored by his expectation of leniency, and that there was no corroboration of the testimony of Miller, an accomplice.

2. The appellants Williams and Cuff withdrew from the plan or scheme before consummation thereof.

There is, of course, no question but that the non-appealing and guilty pleading Miller stole the automobile and transported it across state lines. Did the other defendants aid and abet?

Miller testified that Williams furnished the pink slips of ownership used in the proposed sale in Las Vegas, and that Cuff furnished the other necessary "identification" documents required to effect the sale of the vehicle. They were "delivered" at Williams' home on April 23, 1961. While Miller changed the license plates on the vehicle, Cuff and Williams were working on these certain papers. When Miller came back into the house, these papers were no longer on the table, but Miller produced them the next day in Nevada.

Williams confirmed Miller's story, testifying he (Williams) had furnished the pink slips; that Miller brought the stolen Thunderbird to the Williams' place of residence; that Miller produced a typewriter that would not work; that all three men tried to make it work; that a stranger knocked at the back door three to three and one-half hours after this conference began, and said: "You don't know me, but if you have anything around here that shouldn't be here, you'd better clean up." The stranger was not invited in. He identified himself by name, which was unknown to Williams at the trial. Williams was sure this stranger was a policeman, and so he told the other two defendants, "the deal is all off." "I told them both to leave, and if they wanted the two pink slips, to make some kind of deal on that and leave." No deal was agreed to (according to Williams), but *Miller picked up all the documents* and left.

On direct examination, Williams testified as follows:

"Q. Did he [the stranger] also tell you at that time that some picture of yours was down some place?

"A. Yes, he mentioned that." (Tr. p. 310.)

On cross-examination on behalf of defendant Cuff, this testimony was given by Williams with respect to Williams' conversation with "the stranger":

"Q. But you understood him to tell you, as you testified (sic), that your picture had been found with some pink slips?

"A. Yes.

"Q. And that Mr. Casey had been arrested? (sic)

"A. Yes." (Tr. p. 314.)

Despite the appearance of this stranger, and the effect on Williams and Cuff of whatever he might have said, Miller testified it was *after* the meeting at Williams' house, at a coffee shop at Manchester and Vermont Streets, that the pink slips supplied by Williams were delivered to Miller, and that only the other ("identification") papers were delivered to him at Williams' house. Williams denied any second meeting at a coffee shop, but had no explanation as to how Miller could have received the pink slips used by him the next day to sell the auto in Las Vegas if he had not permitted Miller to take them. It was the duty of the trial court to arrive at a conclusion as to who was telling the truth.

Appellants urge that the evidence was insufficient to establish guilt (a) because Miller was coerced by the sentence pending over him; (b) because Williams withdrew from the plan.

■■ A careful reading of the evidence discloses sufficient evidence to convict both appellants. As counsel for appellants realize, the testimony of an accomplice need not be corroborated in the federal courts. Counsel for appellants urge us to change the federal rule. This we decline to do. Audett v. United States, 9 Cir. 1959, 265 F.2d 837, 846, certiorari denied 361 U.S. 815, 80 S.Ct. 54, 4 L.Ed.2d 62; Ambrose v. United States, 9 Cir. 1960, 280 F.2d 766, 768, n. 8. His testimony must be received and considered with caution. There is no evidence that the capable and experienced trial judge failed to so regard and consider such evidence, though he made no observations with respect to the evidence when he found both defendants guilty.

■ There is no evidence that Miller was coerced in the ordinary sense of that word, i. e., he was not "restrained by force" or "compelled to [any] action." There was no reason for Miller to add anything to Williams' self-admitted testimony that he (Williams) had furnished to Miller the pink slips, plus a "form" for use (and which was used) in the illegal sale.

Neither is there any clear evidence Williams "withdrew" from the plan. He became frightened at the appearance of "the stranger" at his door, but he still was willing to supply the pink slips essential to the illegal sale, wherever it might take place. That is established (a) by his own testimony that "[he] was willing to make some kind of a deal" on them, and (b) that he permitted Miller to take them with him (if we believe Williams). It seems more, rather than less, logical to further believe Miller that the pink slips were delivered to him at the coffee shop by Williams, *after* all had left Williams' home early in the morning of the day the vehicle was offered for sale. This was further aid, not any "withdrawal" from the illegal scheme.

■ Because the parties to the plan for stealing the auto mentioned a possible sale thereof at two cities within the State, does not mean they did *not* agree it could be sold elsewhere, in or out of the State. One need not agree to or even know all details, minor or otherwise, of a planned crime in order to aid and abet the commission thereof. Loftus v. United States, 7 Cir. 1931, 46 F.2d 841. And see, Anderson v. United States, 1938, 307 U.S. 625, 59 S.Ct. 822, 83 L.Ed. 1502.

Finding no error, we *affirm*.