**Keith Leland SIDDERS and William Arthur Clark, Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 21619.**

United States Court of Appeals Ninth Circuit.

July 27, 1967.

**514**

Gordon L. Hawkins, Las Vegas, Nev., for appellants.

Joseph L. Ward, U. S. Atty., Robert S. Linnell, Asst. U. S. Atty., Las Vegas, Nev., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and BARNES and MERRILL, Circuit Judges.

MADDEN, Judge:

The appellants, Sidders and Clark, were indicted and convicted in the United States District Court for the District of Nevada. The indictment charged that the appellants, on or about September 25, 1964, robbed two employees of the First National Bank of Nevada, Las Vegas, Nevada, of $6,183.04 of money belonging to the bank, and in doing so assaulted the two employees, the appellants' actions being violations of § 2113(d) and § 2 of Title 18 of the United States Code. The jury found appellants guilty of the lesser included offense of bank robbery without assault, a violation of § 2113(a) of Title 18. The court sentenced Sidders to the custody of the Attorney General for treatment and supervision for a period of ten years under the provisions of § 5010(c) and § 5017(d) of Title 18 of the Code. It sentenced Clark to 15 years imprisonment.

In this appeal the appellants specify as errors committed by the trial court the admission of certain testimony and exhibits relating to the purchases of and payments for automobiles by the appellants at various times following the robbery here involved; the admission of testimony of a prosecution witness as to a statement made to him by the appellant Clark as to the amount of money which Clark had at a certain time after the robbery; the admission of testimony of prosecution witnesses as to the employment of the appellants before and after the robbery, this testimony being presented by the prosecution as having a bearing upon the sources of the money spent by the appellants for the purchase of the automobiles referred to above; and the admission of testimony of a prosecution witness to an alleged prior contradictory statement by a defense witness.

We recite the substance of the prosecution's evidence. At approximately 6:30 p. m. on September 24, 1964, the female drive-in teller of the bank was crossing the driveway between her drive-in window and the bank with a box containing the day's receipts of currency. She was accompanied by a vault teller who carried the box containing the coins. Together they had a total of $6,183.04. As they approached the rear door of the bank a white two-door automobile drove up and stopped. One man jumped out of the auto, pointed a gun at the vault teller, grabbed the boxes containing the money, got into the car, which was driven away by another man. The tellers noted the license number of the car, Nevada CB-3639, and that the man who had grabbed the money wore a knitted ski mask and the driver wore a baseball cap and wrap-around sun glasses. A by-stander witnessed the robbery and described the robbery car as a 1964 Chevrolet, white, with Nevada license CB3639.

The person to whom those license plates had been issued testified that she was an employee of the Dunes Hotel in Las Vegas and that the plates had been taken from her car at some time prior to September 26. The 1964 white Chevrolet of a guest at the Dunes Hotel was stolen on September 24. About an hour after the bank robbery, a Las Vegas policeman discovered the Chevrolet abandoned in a shopping center and notified the Federal Bureau of Investigation. An FBI agent removed the license plates from the car and took fingerprints from them and from the interior of the car. Several of the fingerprints on the license plates

were those of the appellant Clark. One of the numerous prints from the interior of the car was that of the appellant Sidders. In the car were found papers from the robbed bank, $33.04 in coins strewn about the back seat of the car, and a red cap.

A witness, Robert Middleton, who had a criminal record, testified that he became acquainted with appellant Sidders in March of 1965 and that some time prior to July of 1965 Sidders had told him that "the bank had been robbed and it was himself and Mr. Clark"; that "the car that was used was stolen from the Dunes"; and that drive-in tellers were "easy to rob."

Sidders and Clark lived together in Clark's apartment from February or March, 1964, until the end of September, 1964.

On September 28, 1964, Sidders purchased an automobile in San Francisco, California, paying $2100 in cash and travellers checks for it. On December 28, 1964, Sidders purchased a car in Detroit, Michigan, paying $3,390 in cash for it. On January 22, 1965, Clark purchased an automobile in Detroit, Michigan, paying $2,867 in cash for it. He then travelled to New Jersey, North Carolina and Florida and always stayed at the best places.

 Adverting now to the appellants' claims that errors were committed at the trial, we consider the evidence of the purchase by the appellants of automobiles for cash, after the robbery. The appellants recognize that when there is other evidence connecting an accused person with a crime, the perpetrator of which obtained money from the crime, evidence that the accused person was impecunious before the crime but well provided with money after the crime is admissible as circumstantial evidence that the crime was the source of the money. Hansberry v. United States, 295 F.2d 800 (CA 9, 1961), and Lyda v. United States, 321 F.2d 788 (CA 9, 1963), are pertinent on this problem. The opinion in United States v. Jackskion, 102 F.2d 683, 123 A.L.R. 116 (2d Cir., 1939), cert. den. 307 U.S. 635, 59 S.Ct. 1032, 83 L.Ed.

1517, cites the pertinent case law and the text authorities. But the appellants say that the time of the possession of the money after the date of the crime may be so remote as to make the evidence irrelevant. This remoteness element has no bearing on the purchase of a car by Sidders for $2100 on September 28, four days after the robbery. The other purchases, by Sidders on December 28, 1964, and by Clark on January 22, 1965, do raise a problem of remoteness. The greater the interval of time between the robbery and the expenditure of money, the more available are opportunities for the accused to have obtained the expended money by other means, conventional or unconventional, but not related to the crime which is on trial. It would seem that the problem of remoteness, unless the remoteness is so extreme that the expenditure cannot reasonably be regarded as having any connection with the crime on trial, is a problem of the weight of the post-robbery expenditure evidence, rather than its admissibility. If, for example, an accused person were shown to have been impecunious before the crime and to have done nothing after the crime by which he could have obtained the money which he expended some months later, it would not be illogical to infer, in proper circumstances, that he had prudently hoarded the proceeds of the robbery during the interval.

 The appellants urge that their impecuniousness before the robbery was not sufficiently proved. There was evidence of Sidders' employment for short periods by different employers from some two years to about one year before the robbery, at work which would not have enabled him to accumulate large sums of money, and that from January of 1964 down to the time of the trial he had not worked. Testifying on his own behalf, he did not claim that he had accumulated money from employment. He testified that he had won the money which he had used to purchase the automobiles by gambling successfully. It was within the proper province of the jury to disbelieve this testimony, and its verdict

showed that it did not believe it. The appellant Clark worked as a bartender until July or August, 1964. Thereafter he was unemployed, to the time of his purchase of the automobile in Detroit in January, 1965. He testified that he had won a large sum of money gambling, and had made money buying and selling automobiles, rings and watches while he was a bartender. The jury apparently did not believe this testimony.

The appellant Clark's exception as to testimony that Clark had said that he had $6700 in his possession in January, 1965, raises the same questions of impecuniousness and remoteness that are raised by the testimony as to the purchase of the automobiles.

█ The appellant Sidders complains of the admission of the testimony of Lola Smith with regard to whether Sidders was employed or not while he was a tenant in her trailer court. Her testimony was that she did not know whether he was employed or not. Her testimony could not have hurt the appellant.

Mr. Henry, a witness for the defendant Clark, testified that Clark had won $3000 gambling. He was asked on cross-examination, first, whether he had not, in an interview with FBI agent Hafen on December 12, 1964, told Hafen that he did not know whether Clark had won $3000 gambling. He said he had not made such a statement, and that his statement to the FBI agent was the same as what he had just testified to at the trial. He was then asked the following question: "It is your testimony that you at no time told Agent Hafen that you had no knowledge of your own of Mr. Clark winning $3,000.00 at the Fremont sometime in 1964?" His answer was: "I told the FBI just what I just said."

As a rebuttal witness for the prosecution FBI Agent Hafen testified that he had interviewed Henry on December 9, 1965, and that Henry had told him that he had been drinking heavily, that he had no personal knowledge of Clark's winning the money but he had been told by other people at the Fremont that Clark had won some money.

The appellant Clark urges that Hafen's testimony, admitted to impeach the credibility of Clark's witness Henry by showing that he had made, outside of court, a prior statement inconsistent with his testimony at the trial, was inadmissible because no proper foundation for Hafen's rebuttal testimony had been laid in the questioning of Henry. The question at first put to Henry did specify December 12 as the date of Henry's conversation with Hafen, and Hafen's testimony placed the conversation on December 9. But before he left the witness stand Henry testified that *at no time* had he made a statement to Hafen inconsistent with his testimony just given at the trial.

█ We think a sufficient foundation was laid for the Hafen testimony. Henry's ready answer to the "at no time" question shows that there was no confusion in his mind about different interviews at different dates at which he might have made different statements.

█ The weighty evidence of their fingerprints in and about the automobile used in the robbery and the statement of Sidders to Middleton that he had committed the robbery laid a proper foundation for the evidence tending to show that they had money to spend after the robbery which they had not had before. Impecuniousness is relative and does not require a showing that one is behind in his rent or has written checks without having money in the bank. One may be living solvently upon modest wages or a small pension, but if a robbery occurs and there is evidence connecting him with it, and after the robbery he has some thousands of dollars to spend, he may logically be regarded as having been impecunious but having become suddenly rich, relatively to his former condition. In the instant case the appellants, in their testimony, attributed their post-robbery possession of money to successful gambling and, in the case of Clark, to profitable trading. But the jury did not believe

their explanations, and convicted them. This was well within the province of the jury.

We find no error, and affirm the judgments.