UNITED STATES of America,
Appellee,

v.

Sidney BERNSTEIN and George Harr,
Appellants.

No. 195, Docket 33785.

United States Court of Appeals
Second Circuit.

Argued Oct. 2, 1969.

Decided Nov. 3, 1969.

———◆———

Louis Bender, New York City (Lloyd A. Hale, New York City, of counsel), for appellants.

Lars I. Kulleseid, Asst. U. S. Atty. (Robert M. Morganthau, U. S. Atty. for the Southern District of New York, William J. Gilbreth, Asst. U. S. Atty., of counsel), for appellee.

Before FRIENDLY, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

Appellants, co-owners of Harr & Bernstein, Inc., were convicted on trial to the jury in the United States District Court for the Southern District of New York, Lloyd F. MacMahon, *Judge*, of causing to be made tax returns on behalf of Harr & Bernstein, Inc. understating its income for the years ending January 31, 1962, 1963, 1964 and 1965, in violation of 26 U.S.C. § 7206(1) and of evading personal income taxes during the years 1961 through 1965, in violation of 26 U.S.C. § 7201. We affirm the judgment.

■ The appellants, as co-owners of Harr & Bernstein, Inc. (the firm), a Manhattan millinery manufacturer of ladies' hats and related items, were convicted on four counts (one for each year) of submitting corporate tax returns understating the taxable corporate income, and since one half of the firm's taxable income was distributed to each of the two defendants in each of the years, they were also convicted on five counts each of evading personal income taxes for the years 1961–1965. The government case relied principally upon the testimony of Alphonso Cavalieri, a supplier to Harr & Bernstein, Inc. and Mrs. Florence Kirschner, Harr & Bernstein's bookkeeper until November, 1964; their testimony was supported by records. The overstatements in Cavalieri's invoices to the firm for the period in question had the effect of giving the firm a lower taxable income than it should have reported, and correspondingly had the same effect on the defendants' personal returns. The defense was based upon the testimony of defendant Harr and Mrs. Anne Trueman, the firm's bookkeeper since December, 1964. The defense also strongly attacked the credibility of the two main government witnesses in cross-examination. The evidence was ample, if believed, to sustain the convictions.

The indictment was filed April 5, 1968. After determination of motions for discovery and bill of particulars, the case was set for trial in December, 1968. Both defendants had histories of cardiac disease, Harr having suffered a coronary occlusion in 1959 and Bernstein a coronary thrombosis in February, 1967. Not until the case was about to be reached for trial, however, was an effort made to obtain a continuance. On March 14, 1969 the defendants filed a motion supported by two doctors' letters, one concerning each defendant, asking that the case be marked off the trial calendar on the ground that a trial would pose a risk to their health and lives, or in the alternative, for an order appointing a doctor to examine the defendants and to report to the court and counsel for each side, in writing, the results of his examination, and for a hearing on their ability to stand trial should such a hearing be necessary. Judge MacMahon entered an order appointing Dr. Texon, another cardiovascular expert, to examine the defendants regarding their physical ability to stand trial and report to the judge first orally and then in writing. Based on his examination of the defendants and the information submitted in the letters supporting the motion to strike from the calendar, Dr. Texon found the defendants able to stand trial. The judge ruled that the defendants were able to stand trial.

During the first day of trial, the defendants filed a petition in this court for a writ of mandamus directing the trial judge to hold a hearing to determine whether or not the defendants may stand trial without risk to health and lives. The petition was denied three days later; however, at the trial on the same day, after the government concluded its case, the defendants once again moved to hold such a hearing. The motion was granted, and the defendants were given a short period in which to produce their doctors to testify. During the hurried activity to find the doctors, Harr became ill and was taken to a nearby hospital; he was later taken home and examined by Dr. Texon and one of the defendants' doctors. Before the trial was resumed, the hearing was held over a period of several days, and all three doctors testified and were cross-examined. Dr. Texon and the defendants' doctor who examined Harr after his illness in court further testified regarding Harr's ability to continue to stand trial. At the conclusion of the hearing, Judge MacMahon adhered to his ruling that the defendants were able to stand trial and further ruled that Harr could continue to stand trial; the judge informed the defendants they could have medical aid present and that he was willing to have more frequent recesses. The defendants did not accept his offer. Harr testified at some length for the defense.

■■ Defendants contend that they were denied due process of law because of the lack of a proper and timely determination of their physical fitness to stand trial. This claim is not well taken. The granting or denying of a petition for continuance on the ground that the accused is incompetent to stand trial lies in the sound discretion of the judge. An abuse of discretion will call for reversal only where there is a showing that the defendant's ability to defend himself was substantially impaired. United States v. Knohl, 379 F.2d 427 (2d Cir. 1967).

Although he might have been better advised to hold a pre-trial hearing concerning the defendants' ability to stand trial, Judge MacMahon did not abuse his discretion in refusing to do so. The judge had before him Dr. Texon's oral report that the defendants were able to stand trial and his reasons for such a recommendation; furthermore, the evidence showed that Bernstein's attack of acute coronary thrombosis had occurred two years earlier and he had returned to a relatively normal life (so much so that defense counsel requested permission shortly after the trial began for him to be permitted to work at the firm during the trial), and that Harr's coronary occlusion was ten years old.

■ Even if there were said to be some abuse of discretion at this point, it was later corrected before the defense began its presentation. The judge granted a hearing at the close of the government's case, and despite the fact that he initially determined to allow the defendants only thirty minutes to produce their doctors, the hearing was in fact held over the next several days. The determination of competence to stand trial is basically a question of fact; where there is a conflict of testimony the trial judge is in a better position to resolve it than appellate courts. United States v. Armone, 363 F.2d 385 (2d Cir. 1966). Based upon Dr. Texon's testimony, his own observations of the defendants and other factors such as the time elapsed since the heart attacks of the defendants and the request for Bernstein to be permitted to work during the trial, the judge did not abuse his discretion in finding the defendants able to stand trial. Harr subsequently testified at some length, and although the judge suggested that the defendants could have medical aid present and have more frequent recesses, the defendants did not pursue this suggestion. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed. 2d 815 (1966) is not helpful to appellants. There, no hearing was held on Robinson's sanity, and a hearing six years later was deemed no cure for the failure to determine competency at the time of trial. Here, hearing was held prior to the presentation

of the defendants' case and there was examination and cross-examination of the conflicting theories of the various medical experts.

■ The defendants were not denied a fair trial. Undoubtedly the judge was harsh in some of his comments to defense counsel, but most of these comments were out of the hearing of the jury. After searching the record, we believe that although the judge may have been unnecessarily harsh at times to both counsel, in the instances cited he had a proper purpose, e. g., to clarify the facts, to correct an error in stating the law by defense counsel in his summation and to keep the trial progressing without unnecessary delay. The sentences, while severe considering age, physical condition and lack of a previous record, were within the statutory limits.

■ There is some justification for complaint on the restrictions on use of prior inconsistent statements in cross-examination. In dealing with a prior inconsistent statement of a witness, counsel need not necessarily show it to the witness; all that fairness requires is that the witness is told when and where he made the putatively contradictory statement. United States v. Dilliard, 101 F.2d 829, 837 (2d Cir. 1938). But defense counsel here was able to use some of the material in cross-examination, and the judge has considerable discretion in the procedure to be used in allowing use of prior inconsistent statements in cross-examination of a witness; where, as here, the judge insisted upon a technical procedure to be used to lay a foundation and defense counsel persistently did not follow such procedure thereby causing the judge to sustain objections to the use of the statement, and the judge subsequently allowed defense counsel to read parts previously excluded, in counsel's summation to the jury, we do not find such an abuse of the judge's discretion as to warrant reversal.

We find no merit in appellants' other contentions. The judgment is affirmed.