**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**James Allen HIBLER, Defendant-Appellant.**

**No. 71–1322.**

United States Court of Appeals, Ninth Circuit.

July 5, 1972.

**456**

he was stopped at approximately 11:30 a. m. by three Negro men in a 1958 black Chevrolet parked in a driveway which crossed the sidewalk on which he was proceeding. The man sitting in the front passenger seat of the car exhibited a gun and ordered the victim to "come here." The victim complied. He was then told to put the mail in his hand in his bag, drop the mailbag and run away. He did as he was told, but managed to get the license number of the car (IAF 570). The victim testified that the man with the gun wore a black hat with a wide, floppy brim, and a black T-shirt. At approximately 3:00 p. m. the same day Hibler was arrested near his home while driving a 1958 black Chevrolet, license IAF 570, belonging to one Aldridge Haynes, the only other occupant of the car at that time.

### A.  Sufficiency of the Evidence.

The *only* evidence which connected Hibler with the robbery was the testimony of Haynes, who admitted being one of the three robbers. This is the story told by Haynes on the witness stand. Hibler originally suggested the idea of robbing a mailman. Pursuant to that suggestion Haynes met Hibler at Hibler's home on August 13, 1970, at 10:00 a. m. The two men were joined by a third man whom Haynes had seen once before but whose name he did not know. The three took Haynes' car and robbed the mailman at about 11:30 a. m. The third man drove; Hibler sat in the front passenger seat and did the talking to the mailman; Haynes sat in the rear seat during the robbery. The third man produced a gun, removed the bullets from it, and handed the gun to Hibler and the bullets to Haynes. Haynes put the bullets in his pocket. Hibler used the gun in the manner described by the victim. The robbers drove back to Hibler's house, where they went through the mail and found three or four checks. Haynes said that he had seen the mailman writing down the license number of the car

Victor Sherman (argued), of Nasatir, Sherman & Hirsch, Beverly Hills, Cal., for appellant.

William D. Keller, U. S. Atty., Joseph H. Golant, Asst. U. S. Attys., Eric A. Nobles, Los Angeles, Cal., for appellee.

Before CHAMBERS and DUNIWAY, Circuit Judges, and ANDERSON, District Judge.*

DUNIWAY, Circuit Judge:

Hibler appeals from his convictions of robbing a United States mail carrier (18 U.S.C. § 2114) and possessing stolen mail (18 U.S.C. § 1708), asserting insufficiency of the evidence, failure of the prosecutor to disclose evidence valuable to the defense, and various procedural errors of the trial judge. After one trial ended in a mistrial, Hibler was found guilty by a jury on both counts at his second trial. We reverse.

The facts concerning the robbery itself are undisputed: the victim was delivering mail on August 13, 1970, when

---

* Honorable J. Blaine Anderson, United States District Judge, District of Idaho, sitting by designation.

as it drew away from the robbery and Hibler suggested moving the car from its on-street parking place. Haynes, at Hibler's suggestion, left for a few minutes and moved his car from the street to the parking lot of a nearby restaurant. After Haynes returned to the house he helped Hibler take the mail out in back of the house to "something like an outhouse." The third man left; then Haynes and Hibler went to cash the checks, but were arrested in Haynes' car. The bullets, the gun and the checks were left on top of a stereo at Hibler's house.

Haynes' version of the facts is not corroborated by *any* other evidence and is contradicted in several respects by his own previous statements and by the testimony of others.

*First, identification:* The victim, who testified that he got a good look at the robber in the front passenger seat of the car, and that he would possibly recognize that man if he saw him again, was unable to identify Hibler as the robber at the trial. Moreover, Hibler, after his arrest, asked for a lineup. The request was granted, and Hibler was one of twelve men in the lineup. The victim, however, was unable to identify him at the lineup. At trial, the victim recognized Hibler as one of those whom he had seen at the lineup, but still could not identify him as the robber. This was in spite of the fact that, at the lineup, Hibler not only appeared, but was required to say the words spoken by the robber to the victim. In theory, a line-up has two objectives—to assist in the identification of the guilty by providing an opportunity, under controlled conditions, for victims to make an identification, and to protect the innocent by giving the accused an opportunity, under controlled conditions, to show that he is not the offender. Here, Hibler asked for the lineup, and in spite of what happened there, it did him no good. We do not for a moment suggest that the result of the lineup is conclusive. What is important is that the victim was the *only* government witness beside Haynes who could

have identified Hibler as the robber. His inability to do so, either at the lineup or at trial, strongly contradicts Haynes' story.

*Second, absence of physical evidence.* There is no evidence that any incriminating evidence was found on Haynes or Hibler when they were arrested. A search of Hibler's house later in the day, after he and Haynes were arrested, revealed no gun, no bullets, no checks, and no bag of stolen mail in a back-yard "outhouse." Nor did the search turn up the floppy brimmed black hat or black T-shirt.

*Third, inconsistencies in Haynes' testimony.* Haynes' testimony contained several inconsistencies with his earlier statements to federal investigators and at Hibler's first trial—*e. g.,* when and where Haynes first saw Hibler on the day of the robbery; when, where and how many times the three robbers met to discuss the proposed robbery. In addition Haynes was unable to explain why, if he and Hibler were on their way to cash the stolen checks when arrested, neither had the checks at that time.

Hibler's defense was an alibi. This is his story: A friend drove him to the Urban League to interview a job counsellor at approximately 11:30 a. m. on the day of the robbery. He arrived at the Urban League office at about noon and was told by the receptionist that the job counsellor whom he wanted to see had already left for lunch. He returned home by bus and arrived shortly after 12:30. Later in the afternoon Haynes came to his house and asked him to help Haynes start his car. Hibler went to the parking lot of a nearby restaurant, helped start Haynes' car, and was arrested while in the car.

Hibler's alibi was supported by his sister and his girl friend, both of whom were at his home when he allegedly left for the Urban League and returned, and by Lacy Gibson, the friend who allegedly drove Hibler to the Urban League. The jury, of course, could discount their testimony. The receptionist at the Urban

League testified that Hibler did arrive at the office to see a job counsellor at noon on either the day of the robbery or one week earlier, but she was unable to say positively which of the two Thursdays it was. She did say that he only came once. In addition Hibler's version of the facts received some support from Haynes' own statements prior to the trial. For example, at the first trial Haynes testified that when he saw Hibler on the day of the robbery, Hibler stated that he had just returned from the Urban League. Haynes also initially told the federal investigator that Hibler had arrived home at about 12:30 p. m. (an hour after the robbery) and that he asked Hibler to help start the car.

This circuit has reiterated in many cases the rule in federal courts that an accused may be convicted on the uncorroborated testimony of an accomplice. Caminetti v. United States, 1917, 242 U. S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442. However, in most of those cases the opinions state or show that there was some independent evidence to corrobo-

rate the accomplice's testimony.[1] Those cases which rely solely on the rule to affirm convictions do not indicate in the opinions whether or not there was any independent corroborative evidence.[2]

Here, however, the transcript establishes clearly that the accomplice's testimony received no corroboration whatsoever from any other evidence adduced by the prosecution or the defense. We do not reject the established rule that an accomplice's testimony need not be corroborated before an accused can be convicted. Haynes' testimony was enough to convict.

■ This case, however is unique in this writer's experience in two respects. First, there is *no* evidence to corroborate the accomplice. Second, some of the government's own evidence tends to contradict, rather than to corroborate, the accomplice. Haynes' car was certainly used in the robbery. That was the one solid piece of evidence that the government had to show who committed the crime. Thus Haynes had a strong motive

1. *See, e. g.*, United States v. Daniel, 9 Cir., 1972, 459 F.2d 1029; United States v. Andrews, 9 Cir., 1972, 455 F.2d 632; United States v. Williams, 9 Cir., 1970, 424 F.2d 1056, cert. denied, 399 U.S. 905, 90 S.Ct. 2198, 26 L.Ed.2d 561; Montgomery v. United States, 9 Cir., 1969, 407 F.2d 1312; Darden v. United States, 9 Cir., 1969, 405 F.2d 1054; Suhl v. United States, 9 Cir., 1968, 390 F.2d 547, cert. denied, 391 U.S. 964, 88 S.Ct. 2035, 20 L.Ed.2d 879; Moody v. United States, 9 Cir., 1967, 376 F.2d 525; Torres v. United States, 9 Cir., 1965, 353 F.2d 734; Quiles v. United States, 9 Cir., 1965, 344 F.2d 490, cert. denied, 382 U.S. 992, 86 S.Ct. 571, 15 L.Ed.2d 479; Lydia v. United States, 9 Cir., 1963, 321 F.2d 788; Proffit v. United States, 9 Cir., 1963, 316 F.2d 705; White v. United States, 9 Cir., 1963, 315 F.2d 113, cert. denied, 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed.2d 55; Marcella v. United States, 9 Cir., 1960, 285 F.2d 322, cert. denied, 366 U.S. 911, 81 S.Ct. 1085, 6 L.Ed.2d 235; Claypole v. United States, 9 Cir., 1960, 280 F.2d 768; Ambrose v. United States, 9 Cir., 1960, 280 F.2d 766; Stillman v. United States, 9 Cir., 1949, 177 F.2d 607; Catrino v. United States, 9 Cir., 1949, 176 F.2d 884; Westenrider

v. United States, 9 Cir., 1943, 134 F.2d 772; Hass v. United States, 9 Cir., 1929, 31 F.2d 13, cert. denied, 279 U.S. 865, 49 S.Ct. 480, 73 L.Ed. 1003.

2. *See, e. g.*, Sabari v. United States, 9 Cir., 1964, 333 F.2d 1019; Bowie v. United States, 9 Cir., 1963, 318 F.2d 693, cert. denied, 375 U.S. 885, 84 S.Ct. 159, 11 L.Ed.2d 114; Audett v. United States, 9 Cir., 1959, 265 F.2d 837, cert. denied, 361 U.S. 815, 80 S.Ct. 54, 4 L.Ed.2d 62; Cowell v. United States, 9 Cir., 1958, 259 F.2d 660; Doherty v. United States, 9 Cir., 1956, 230 F.2d 605. In Williams v. United States, 9 Cir., 1962, 308 F.2d 664, the defendant admitted most of the overt acts attributed to him by the accomplice-witness, but asserted the defense of withdrawal from the criminal activity. The court stressed that the jury need not believe the evidence of withdrawal and that there was some circumstantial evidence consistent with the accomplice's version of the facts. In Toles v. United States, 9 Cir., 1962, 308 F.2d 590, cert. denied, 375 U.S. 836, 84 S.Ct. 79, 11 L.Ed.2d 66, the court stated that the accomplice's testimony was the prosecution's "primary" evidence, implying that other evidence also supported the conviction.

to "dump" the case on someone, and he did just that. His testimony, like that of every accomplice, is suspect. Under these circumstances, we are under a special obligation to examine the other asserted errors in the conduct of the trial to insure that a miscarriage of justice does not occur. Lyda v. United States, 9 Cir., 1963, 321 F.2d 788, 795.

B. *Failure of the prosecutor to disclose favorable evidence.*

Hibler's explanation of his being in the driver's seat of Haynes' car at the time of his arrest was that he was responding to Haynes' request for assistance in starting the car. This explanation was not supported by any evidence other than Hibler's own testimony and in some degree by the fact that Haynes originally told the federal investigator that he had gone to Hibler's house in the afternoon and requested such assistance and that Hibler had helped him. In fact, the stipulated testimony of John Helvin, a Los Angeles Police detective who had spotted Haynes' car parked in the restaurant parking lot on the afternoon of the robbery and kept it under observation, created a negative inference concerning Hibler's explanation. It was stipulated that, if called, Helvin would testify that at approximately 3:00 p. m. he observed Haynes and Hibler enter the car, with Hibler driving and Haynes in the right front seat. As the car drove away from the restaurant, it was stopped by officers of the Los Angeles Police Department and the occupants arrested. No mention was made of any effort by the two men to start the car in an unusual manner; the stipulated testimony thus implicitly cast doubt on Hibler's explanation and made his credibility suspect.

As the prosecutor admitted to the court after the verdict was returned, although he was not aware at the time the stipulation was made, he became aware before he offered it, that Helvin had in fact seen Haynes open the hood of the car while Hibler sat in the driver's seat and had observed Hibler help Haynes start the car, just as Hibler had testified. The prosecutor justified his failure to disclose this evidence to the defense on the ground that he did not think it was "material."

There is no doubt that the prosecution in a criminal trial has a duty of candor toward the defendant. Brady v. Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. This duty is an ingredient of due process. The test is whether the undisclosed evidence was so important that its absence prevented the accused from receiving his constitutionally-guaranteed fair trial. That defense counsel did not specifically request the information, that a "diligent" defense attorney might have discovered the information on his own with sufficient research, or that the prosecution did not suppress the evidence in bad faith, are not conclusive; due process can be denied by failure to disclose alone. Jackson v. Wainwright, 5 Cir., 1968, 390 F.2d 288; Levin v. Katzenbach, D.C.Cir., 1966, 363 F.2d 287, 290, 124 U.S.App.D.C. 158; Barbee v. Warden, Maryland Penitentiary, 4 Cir., 1964, 331 F.2d 842, 845; United States ex rel. Meers v. Wilkins, 2 Cir., 1964, 326 F.2d 135, 137, 140; United States ex rel. Thompson v. Dye, 3 Cir., 1955, 221 F.2d 763, 768, cert. denied, 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773; United States ex rel. Almeida v. Baldi, 3 Cir., 1952, 195 F.2d 815, 820, cert. denied 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341. "In gauging the nondisclosure in terms of due process, the focus must be on the essential fairness of the procedure and not on the astuteness of either counsel." Barbee v. Warden, *supra*, 331 F.2d 842, at 846.

We agree with the District of Columbia Circuit's description of the role of the prosecutor in situations like this:

"When there is substantial room for doubt, the prosecution is not to decide for the court what is admissible and for the defense what is useful. 'The United States Attorney is the representative not of an ordinary party to

a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.' Berger v. United States, 295 U.S. 78 [55 S.Ct. 629, 79 L.Ed. 1314]. . . . " Griffin v. United States, 1950, 87 U.S.App.D.C. 172, 183 F.2d 990, 993.

The prosecutor's unilateral decision not to disclose the evidence "invited the risk of error." Application of Kapatos, S.D. N.Y., 1962, 208 F.Supp. 883, 888, quoted in Jackson v. Wainwright, *supra*, 390 F. 2d at 298.

■ Thus Hibler is entitled to reversal if the government failed to disclose evidence which, in the context of this particular case, might have led the jury to entertain a reasonable doubt about his guilt. While in many cases it might be true that evidence of the type involved would not be crucial on the issue of a defendant's guilt or innocence, we have here a case, as we have shown, in which the evidence was extremely close. The credibility of Haynes and Hibler were vital issues. This court has specifically held that undisclosed evidence may be "material" on the issue of an accused's guilt or innocence even though it goes only to credibility. Loraine v. United States, 9 Cir., 1968, 396 F.2d 335, 339, cert. denied, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270. The testimony tending to support Hibler's version of the facts, including his explanation of why he was driving Haynes' car on the afternoon of the robbery, came mainly

from friends and relatives. Testimony from an independent, unbiased witness which corroborated any portion of Hibler's story would have had the effect of bolstering his credibility in the eyes of the jury and could well have tipped the scales in his favor, given the closeness of the evidence before the jury. As it was, Detective Helvin's stipulated testimony only further cast doubt on Hibler's credibility. That the jury considered Helvin's testimony of special importance can be seen by the request of the jury that his stipulated testimony be read aloud to them again, after five hours of deliberation had failed to produce a verdict. Under such circumstances, we cannot say that the withheld information was so unimportant that it would have had little, if any, effect on the jury's verdict. Rather, "[i]t was substantial evidence which should have been but never was submitted to the jury (the only tribunal entitled to pass upon it). . . . " United States ex rel. Thompson v. Dye, *supra*, 221 F.2d 763 at 767. The relevancy and weight of the undisclosed information was for the jury, and we refuse to speculate on what they would have done if this corroborative evidence had been before them.

C. *Restriction on cross-examination.*

■ The trial judge refused to permit defense counsel to attempt to impeach Haynes by asking about Haynes' testimony at the prior trial. The judge's rationale for this ruling was that because defense counsel had no transcript of the prior trial, he could not properly question the witness about those previous statements.[3]

3. Defense counsel questioned Haynes about the inconsistencies between his present testimony and his testimony at the first trial:
 "Q. Mr. Haynes, is it not a fact that you previously testified that at the time you first saw the defendant on the 13th you saw him walking down the street and he was coming home from the Urban League?
 MR. REGARDIE [the prosecutor]: Objection to the form of the question, your Honor.

THE COURT: The objection is sustained.
 MR. SHERMAN [defense counsel]: May we approach the bench?
 THE COURT: All right.
 (The following proceedings were had at the bench out of the hearing of the jury):
 MR. SHERMAN: Maybe I am not aware of all the rules of evidence, but is the court sustaining the objection because I don't have the testimony to show him as to his prior testimony?

In so holding, the judge was plainly wrong. Even if defense counsel had had a transcript, the ritual prescribed by the judge would not be required, although it is often performed.

"To satisfy the foundation requirement for introduction of an alleged statement for impeachment, the cross-examiner should ask the witness whether he made the statement, giving its substance, naming the time, the place, and the person to whom made. If the witness denies the making of the statement or fails to admit it, the cross-examiner must prove the making of the alleged statement at the next stage of giving evidence." Rob-ertson v. M/S Sanyo Maru, 5 Cir., 1967, 374 F.2d 463, 465.

If the prior statement was oral, and is denied, the proper procedure after laying the foundation is to put someone on the stand who heard the statement and elicit testimony that the witness made the statement. *See, e. g.,* Sidders v. United States, 9 Cir., 1967, 381 F.2d 513, 516; United States v. Amabile, 7 Cir., 1968, 395 F.2d 47, 50; United States v. Borelli, 2 Cir., 1964, 336 F.2d 376, 391, cert. denied, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555. Here, that could have been done by the court reporter, or by anyone else who was present and recalled the testimony of

THE COURT: That is not the proper way to impeach.

MR. SHERMAN: May I have a small lesson here so I know. May I be informed by the court as to the proper method?

THE COURT: If you don't know it Mr. Sherman, I am not here to teach you.

MR. SHERMAN: It is important for the defendant's case to get in questions about the prior testimony.

THE COURT: I understand it and you know how to impeach.

MR. SHERMAN: I am doing it the only way I know how. If it is improper I would like to know the right way.

THE COURT: It is improper.

MR. SHERMAN: May the court please tell me or may we have the noon recess so I may look up the proper way to do it."

The noon recess was then taken and the colloquy resumed after the recess:

"MR. SHERMAN: The court sustained certain objections in this morning's hearing, certain objections, and I intend to lay a foundation for the impeachment of the witness based upon his prior testimony. At that time I attempted to elicit from the witness as to the date of his prior testimony and I attempted, or at least I thought, I asked him didn't he at a prior occasion state such-and-such. The court then sustained the objection for the prosecutor. Since I have had a chance to look at federal criminal procedure, and I have looked at page 552 which is Section 26, paragraph 257, foundation for impeaching testimony, the book seems to indicate the proper way to lay foundation for impeachment based upon prior testimony is to inquire from the witness as to the—that the witness should be asked whether he made the alleged statement setting forth its substance and naming the time, place and persons to whom made and that is the proper way to lay foundation. I thought that is what I did this morning. If I did not I apologize to the court and I would like to know in what manner I should lay the proper foundation if this is not the proper manner.

THE COURT: Mr. Sherman, number one, it is not your memory of what the testimony was, it is the testimony itself that should be shown to the witness, as you do with a deposition, to refresh his recollection to make sure whether or not he has a *refreshed* recollection as to the testimony and then if that is not and it is impeaching testimony then it is then to be read to the jury. That is impeachment.

MR. SHERMAN: We don't have a transcript.

THE COURT: That is not my fault.

MR. SHERMAN: That may not be your fault, your Honor, but the foundation for impeaching testimony, the book indicated that it can be done—

THE COURT: I just told you how to do it, Mr. Sherman. You have asked me and now I have run the school.

MR. SHERMAN: Does that mean that because I don't have a transcript—

THE COURT: I have told you how. Don't argue with me.

MR. SHERMAN: Then I would like a continuance for the purpose of seeking a transcript.

THE COURT: That motion will be denied."

Haynes. If the prior statement was written, questions as to its contents are sometimes not allowed without production of the instrument itself, and impeaching cross-examination is often not allowed until the document is produced and shown to the witness to refresh his memory. However, that procedure is not required; the law requires only that the witness' memory be so refreshed by necessary inquiries as to enable him to explain the inconsistency if he desires to do so. The Charles Morgan, 1885, 115 U.S. 69, 77–78, 5 S.Ct. 1172, 29 L.Ed. 316; *see also* United States v. Bernstein, 2 Cir., 1969, 417 F.2d 641, 644, 401 U.S. 917. If the witness admits making the former contradictory statement, no further proof is necessary. Dilley v. Chesapeake & Ohio Ry. Co., 6 Cir., 1964, 327 F.2d 249, 251; Brooks v. United States, 10 Cir., 1962, 309 F.2d 580, 582.

While this error, too, might not be considered sufficiently prejudicial to require reversal in many cases, we have here an unusual situation in which the credibility of the witness sought to be impeached was the single most critical factor in the trial. The testimony of Haynes was the *only* evidence which implicated Hibler in the crime; his credibility or lack of it, was crucial. One of the most effective means of attacking that credibility was to impeach him with prior inconsistent statements on key elements of his testimony. We cannot say with certainty that the judge's erroneous hindrance of defense counsel in pursuing that objective did not amount to irreparable prejudice in this case.

D. *Denial of transcript of first trial.*

■ Denial of appellant's motion for a transcript of Haynes' testimony at the first trial was proper. Defense counsel did not request the transcript until the jury was about to be impaneled, even though he knew the trial date weeks in advance. The trial court acted within the bounds of its discretion in denying counsel's tardy request and in insisting that the trial be held as scheduled.

The judgment is reversed and the case is remanded for a new trial.

ANDERSON, District Judge (concurring specially):

It has been long thought that a federal rule exists, to wit: That a defendant can be convicted solely on the uncorroborated testimony of an accomplice witness. This "rule" supposedly grew out of the cases of Holmgren v. U. S., 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861 (1910), and later Caminetti v. U. S., 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917). In *Caminetti* the court said, at page 495, 37 S.Ct. at page 198, it is:

". . . the better practice for courts to caution juries against too much reliance upon the testimony of accomplices, and to require corroborating testimony before giving credence to such evidence. While this is so, there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."

It is important to note that the key word "uncorroborated" was omitted from the last sentence in the above quote. That omission was not unintentional. Although the testimony of an accomplice witness in the case was most damaging to the defendant, there was indeed some important corroboration. The defendant took the stand in his own behalf, but declined to answer questions detrimental to his case or put forth defenses to them. The corroboration was the inference to be drawn from the defendant's silence concerning incriminating matters. Therefore, the court in *Caminetti* could not have been concerned with the issue of uncorroborated testimony of an accomplice as the *only* convicting evidence. The court there gave the real test when it said, at pages 495–496, 37 S.Ct. at page 198:

"This court does not weigh the evidence in a proceeding of this character, and *it is enough to say that there was substantial testimony to support the verdict* rendered in the trial courts." (emphasis supplied)

In *Caminetti* Mr. Justice Day, in affirming the Circuit Court of Appeals decision, said that accomplice instructions *"in the form made should not have been given."* This is not the same thing as saying that proper instruction ought not to be given, nor that a conviction cannot be reversed where there is no corroborations and especially where we have the sort of record so ably delineated by Judge Duniway in his opinion. On the contrary, the Supreme Court has indicated rather clearly what is the better practice, Holmgren v. U. S., supra.

If there is "no absolute rule" preventing convictions—then, in the opinion of this writer, there is "no absolute rule" requiring convictions on uncorroborated testimony nor preventing an appellate court from reversing a conviction where there is only the testimony of an accomplice and especially where that testimony is shattered and shredded by contradictions and other asserted errors appear. Lyda v. United States, 9 Cir., 1963, 321 F.2d 788, 795. This is not to say nor suggest that the appellate court should weigh the testimony of the accomplice. Only that it should search the record to determine in a situation such as this whether (1) there is corroboration as to some material points, especially if the testimony of the accomplice is incredible, unsubstantial or seriously contradicted, (2) correct accomplice instructions have been requested or given, and (3) from the standpoint of other asserted errors, that in the whole overview of the case it is assured that there has not been a miscarriage of justice.

The salutary application of the rule (if it be the rule) that a conviction can be had in every case upon the uncorroborated testimony of an accomplice is dangerous in the extreme. It invites perjury and a lying contest. Inherently, the testimony of an accomplice is weak, suspect, and insidious. If "it is better practice for courts to caution juries against too much reliance upon the testimony of accomplices, and to require corroborating testimony" before giving credence thereto, then, in the opinion of this writer, such "better practice" commands that corroboration be the rule, especially as applied to this factual situation.

Later Ninth Circuit cases which are said to further the "rule" set forth in *Caminetti* fit into the same pattern. That is to say, there exists at least *some* form of corroboration in addition to the testimony of an accomplice witness. Therefore, if there is in fact such a federal rule, courts have only had to pay lip service to it. In *Moody v. U. S.*, 376 F. 2d 525 (1967), the defendant was convicted of illegal possession of heroin found in *his* car. The testimony of an accomplice clearly led to the defendant's conviction, but nevertheless that testimony was supported by the fact that the heroin was found in the defendant's car, a very significant corroborating fact.

Likewise, in the more recent case of Suhl v. U. S., 390 F.2d 547 (1968), which the United States relies on heavily, there was a type of corroboration. There the defendant was convicted of mail fraud involving a check-kiting scheme. The accomplice witness changed his story between the two trials, as well as on cross-examination at the second trial, as to who signed the checks. The difference between the *Suhl* case and the one of concern now is that in *Suhl* the jury had the additional corroboration of the physical evidence of the checks with defendant's signature on them.

In the case at bar there is absolutely no form of corroboration, no physical evidence, no inferences to be drawn from the defendant's testimony, only the testimony of an accomplice witness who had every reason to fabricate. Surely the dictum in the *Caminetti* case could not be extended to cover the facts of this case.

Under the circumstances of this factual situation, Haynes' testimony, standing alone and without corroboration, should not be held to be sufficient to convict.

For these reasons and those expressed by Judge Duniway, with the exceptions

noted, I concur in reversal and remand for a new trial.

CHAMBERS, Circuit Judge (dissenting):

The opinions of my colleagues show great concern about the rule which permits a conviction where the only evidence is the uncorroborated evidence of an accomplice. That is not our problem here. Although unable to identify Hibler, Mr. Bryarly, the victim of the robbery, did substantiate Haynes' story as to the details of the robbery.

This is a case where the undisclosed evidence was possibly useful to the defense but not likely to have changed the verdict. Cf. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

There was no error with respect to the restriction of cross-examination. The trial judge made available an adequate substitute for a written transcript of the prior inconsistent statement. Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971).

I would affirm.