**UNITED STATES of America,
Appellee,**

v.

**Larry WILLIAMSON,
Defendant-Appellant.**

**No. 855, Docket 75–1025.**

United States Court of Appeals,
Second Circuit.

Argued April 9, 1975.

Decided May 1, 1975.

---

Stuart R. Shaw, New York City, for defendant-appellant.

John N. Bush, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S.D.N.Y., Lawrence S. Feld, Asst. U. S. Atty., on the brief), for appellee.

Before FRIENDLY and FEINBERG, Circuit Judges, and LASKER, District Judge.[*]

PER CURIAM:

Larry Williamson appeals from a judgment of conviction, on four counts charging mail robbery and related offenses, in the United States District Court for the Southern District of New York after a jury trial before Irving Ben Cooper, J.[1] Appellant claims that he is entitled to a new trial because of the prejudicial conduct of the trial judge, an improper attack upon appellant's character by the prosecution, and an erroneous ruling on the use of grand jury minutes that hampered defense counsel in cross-examination.

There was overwhelming evidence against appellant, a former employee at the Post Office that was robbed. From the testimony of 16 government witnesses, including coconspirator Douglas Simon,[2] the jury was obviously justified in concluding that appellant and three others planned and executed an armed robbery at the Boulevard Post Office in the Bronx in March 1972 and made off with

---

[*] Of the United States District Court for the Southern District of New York, sitting by designation.

1. Count Two charged robbery of mail matter from four Postal Service employees (18 U.S.C. § 2114); Count Three alleged use of pistols in the robbery and injury of an employee (18 U.S.C. § 2114); Count Four charged simple theft of mail matter (18 U.S.C. § 1708); and Count One alleged a conspiracy to commit all of the other crimes (18 U.S.C. § 371).

2. Each of appellant's coconspirators pleaded guilty before trial.

about $12,000 stolen from a mail truck. There is no need to state the facts in greater detail because appellant understandably makes no claim of insufficiency of the evidence.

■ Some of appellant's criticisms of the trial judge are not without foundation. The judge's hostility to defense counsel was evident and there were a number of emotional outbursts that were quite unwarranted. We are particularly concerned about what appears to be a threat by the judge to "remand" Williamson because of counsel's behavior. However, it does not appear that the ardor of defense counsel was in fact affected, and most of the judge's truly critical remarks were outside the presence of the jury. The claim that the judge "took over" the prosecution is an overstatement, although the judge did involve himself far more than necessary in parts of the direct and cross-examination of Simon, the chief government witness, and of other witnesses as well. Also, the judge was apparently unduly sensitive to "looks" of "contempt" by some of those in the courtroom, but we are not persuaded that any of this rendered the trial unfair. We have read the record with care and conclude that to the extent there is substance to appellant's claims, the judge's conduct did not sufficiently affect the trial to warrant reversal.

■ Turning to appellant's next point, there was no attack on his "character." [3] The testimony put before the jury in the Government's case was that defendant's employment had been "terminated." It was defense counsel who opened the door to inquiry about the reasons for termination, but even if he had not, the most the jury might have inferred was that defendant was discharged for "cause," hardly an attack on his charac-

ter, and arguably relevant to show motive. [4]

■ Finally, appellant claims that the judge erroneously required the defense to introduce into evidence the minutes of Simon's grand jury testimony before cross-examining Simon about these prior statements. While the judge apparently did require this at first, he later changed his mind. True, he still made counsel show the witness the relevant portions of impeaching material before cross-examining him. Cf. The Queen's Case, 2 Br. & B. 284, 129 Eng.Rep. 976 (1820). This requirement has for some time been "everywhere more honored in the breach than in the observance," although "[f]airness usually does require that the witness shall be told when and where he made the putatively contradictory statement . . . ." United States v. Dilliard, 101 F.2d 829, 837 (2d Cir. 1938), cert. denied, 306 U.S. 635, 59 S.Ct. 484, 83 L.Ed. 1036 (1939); see also United States v. Bernstein, 417 F.2d 641, 644 (2d Cir. 1969). The procedure followed by the judge is also specifically disapproved in Rule 613 of the new Federal Rules of Evidence, thereby "disposing" of "this misguided rule," as Wigmore has so powerfully advocated. 4 Wigmore, Evidence § 1263, at 636 (Chadbourn rev. 1972); see generally, id. at §§ 1259–63. But it is clear that there was thorough cross-examination of Simon and that the attempted impeachment at this point was over an inconsequential matter; moreover, if counsel did not at first understand what the judge required of him he was given an opportunity on the two days following Simon's appearance to recall him but declined to do so after express inquiry by the judge. Finally, any prejudice to defendant from the judge's ruling was insignificant.

Judgment affirmed.

---

3. Defendant did not testify.

4. The prosecutor's reference in summation to defendant's criminal record was obviously a

slip of the tongue, which was immediately corrected to make clear that he meant Simon.