**Hughes Anderson BAGLEY, Petitioner-Appellant,**

v.

**Walter T. LUMPKIN, Warden, Respondent-Appellee.**

**No. 82–3303.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 1983.

Decided Nov. 10, 1983.

Michael G. Martin, Asst. Federal Public Defender, Seattle, Wash., for petitioner-appellant.

David Marshall, Asst. U.S. Atty., Seattle, Wash., for respondent-appellee.

Before SKOPIL, PREGERSON and FERGUSON, Circuit Judges.

PREGERSON, Circuit Judge:

Appellant Bagley, now on parole, appeals from the district court's order denying his 28 U.S.C. § 2255 (1976) motion to vacate, set aside, or correct his sentence. He contends (1) that the government's willful nondisclosure of impeachment evidence requested before trial denied him effective cross-examination of two key government witnesses, and (2) that the government's failure to disclose the requested information resulted in an uninformed and therefore unconstitutional jury waiver. We need address only the first of these contentions because Bagley failed to raise the jury waiver argument below. *See Egger v. United States,* 509 F.2d 745, 749 (9th Cir. 1975). We reverse.

## FACTS

Bagley was charged in a fifteen-count indictment with firearms and narcotics vio-

lations. On November 18, 1977, twenty-four days before trial, Bagley filed discovery motions requesting the prosecutor to disclose various items of information, including whether the government paid or promised compensation to any of its witnesses or informants. The government responded by providing affidavits from its key witnesses, James F. O'Connor and Donald E. Mitchell, each of whom stated that he had neither received nor expected compensation for his services.

O'Connor and Mitchell were commissioned Washington State law enforcement officers working as deputies for the Milwaukee Railroad during the Bureau of Alcohol, Tobacco, and Firearms (ATF) investigation of Bagley. Unknown to either Bagley or the district court judge during the bench trial, O'Connor and Mitchell had been informed by ATF Agent Prins that the ATF would attempt to pay them "expense money" in exchange for their investigatory services. In fact, O'Connor and Mitchell had each signed an ATF contract entitled "Contract for Purchase of Information and Lump Sum Therefor."

At trial, O'Connor and Mitchell testified about both the firearms and the narcotics charges. On December 23, 1977, the court found Bagley guilty on 11 counts of narcotics violations. He was found not guilty on the firearms charges.

In mid-1980, under the Freedom of Information and Privacy Acts, 5 U.S.C. §§ 552 & 552a (1982), Bagley discovered that O'Connor and Mitchell had in fact received money from the government both before and after the December 1977 trial. Bagley then filed the instant § 2255 motion and contended that the prosecutor's failure to produce information material to the credibility of key government witnesses violated his due process rights.

After an evidentiary hearing, the district court denied the motion. The court found, however, that O'Connor and Mitchell probably "did expect to receive from the United States some kind of compensation, over and above their expenses for their assistance, though perhaps not for their testimony." The court nonetheless found "beyond a reasonable doubt that disclosure of the ATF agreements would not have affected the outcome of the criminal prosecution."

## DISCUSSION

The government acknowledges that upon specific request it has a duty to disclose evidence favorable to the accused. This is the basic principle of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady,* the defendant asked the prosecution before trial to disclose a codefendant's extrajudicial statements relevant to their first-degree murder charges. Although the prosecution disclosed several statements, it withheld one in which the codefendant confessed to the actual killing. The Court ruled that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or the bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196.

In *United States v. Hibler,* 463 F.2d 455, 459 (9th Cir.1972), this court underscored the government's "duty of candor" toward a criminal defendant. The prosecutor in *Hibler* had failed to disclose evidence from an independent, unbiased witness tending to support the defendant's version of the facts. In reversing the conviction, we stated:

> The test is whether the undisclosed evidence was so important that its absence prevented the accused from receiving his constitutionally-guaranteed fair trial. That defense counsel did not specifically request the information, that a "diligent" defense attorney might have discovered the information on his own with sufficient research, or that the prosecution did not suppress the evidence in bad faith, are not conclusive; *due process can be denied by failure to disclose alone.* [Citations.]

*Id.* at 459 (emphasis added).

We articulated the test for determining whether the government's nondisclosure of *Brady* information requires reversal in

*United States v. Goldberg,* 582 F.2d 483 (9th Cir.1978). There we held that,

> [s]ince under the due process clause prosecutorial failure to respond to a specific request "is seldom, if ever, excusable," [*United States v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976)], such a nondisclosure is properly analyzed as error; and it therefore follows that the reviewing judge should apply the harmless error standard, *see id.* at 111–12, 96 S.Ct. 2392 [at 2401]; Fed.R. Crim.P. 52(a); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824 [828], 17 L.Ed.2d 705 (1967). As stated in *Schneble v. Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056 [1059], 31 L.Ed.2d 340 (1972), the *Chapman* standard of "harmless beyond a reasonable doubt" requires a new trial whenever there is a "reasonable possibility" that the error materially affected the verdict.

*Id.* at 488–89 (footnote omitted).

█ In the case before us, Bagley was unaware during trial that O'Connor and Mitchell were subject to impeachment for bias based on their remunerative relationship with the government. The government's failure to disclose this *Brady* information inhibited Bagley's ability effectively to cross-examine two important prosecution witnesses.

In *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court held that the denial of the "right of *effective* cross-examination" was " 'constitutional error of the first magnitude' " requiring automatic reversal. *Id.* at 318, 94 S.Ct. at 1111 (emphasis added) (quoting *Brookhart v. Janis,* 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1965)); *see also United States v. Uramoto,* 638 F.2d 84, 87 (9th Cir.1980) (harmless error doctrine "inapplicable" where case involved "[d]eprivation of the right to a full and robust cross-examination of a paid Government informant").[1] In fact, effective cross-examina-

tion is so important in our legal system that Professor Wigmore described it as "beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 J. Wigmore, *Evidence in Trials at Common Law* § 1367, at 32 (Chadbourn rev. ed. 1974).

Here, the district judge, who presided over the bench trial, concluded beyond a reasonable doubt that disclosure of the ATF agreements would not have affected Bagley's conviction. We disagree. Standing alone, the government's failure to produce requested *Brady* information is a serious due process violation. *Hibler,* 463 F.2d at 459. In fact, this failure is "seldom, if ever, excusable." *United States v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). But a failure to disclose requested *Brady* information that the defendant could use to conduct an effective cross-examination is even more egregious because it threatens the defendant's right to confront adverse witnesses, and therefore, his right to a fair trial. *See Davis,* 415 U.S. at 316–19, 94 S.Ct. at 1110–11.

For these reasons, we hold that the government's failure to provide requested *Brady* information to Bagley so that he could effectively cross-examine two important government witnesses requires an automatic reversal.

REVERSED and REMANDED.

---

1. Although the prosecution has advanced no valid reason for nondisclosure, it contends that its failure to respect Bagley's due process rights does not require reversal because O'Connor's and Mitchell's testimony was actually exculpatory on the narcotics charges, and Bagley

would not have sought to impeach "his own witness."

The government's argument rests on a false premise. After reading the record, we conclude that O'Connor's and Mitchell's testimony was in fact inculpatory on these charges.