UNITED STATES of America,
Appellee,

v.

Rafael MIRANDA, Appellant.

No. 73–3552.

United States Court of Appeals,
Ninth Circuit.

Jan. 13, 1975.

Martha Goldin, Saltzman & Goldin, Hollywood, Cal., for appellant.

William D. Keller, U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and HUFSTEDLER, Circuit Judges, and ENRIGHT, District Judge.*

---

* The Honorable William B. Enright, United States District Judge for the Southern District of California sitting by designation.

## OPINION

ENRIGHT, District Judge:

Appellant was charged with seven counts of embezzlement of federally insured funds from the Main Office of the Imperial Bank in Los Angeles, California. Trial before a jury resulted in conviction on all seven counts. Several trial errors are alleged to have deprived appellant of a fair trial. We agree that two of the alleged errors, in combination, were of sufficient gravity to require reversal.

Appellant was employed by the Imperial Bank from April 1972 to January 1973 as a home loan payment collector in the bank's mortgage department. One of appellant's responsibilities was the acceptance of money from homeowners who came directly to the bank to make loan payments. Appellant was convicted of embezzling seven of these deposits.

Payments were often made in cash, which was stored in a locked cabinet overnight. On the next business day, the cash would be converted to cashier's checks which were then delivered by appellant to the cashier of the bank. The cashier would prepare a cash card to be processed through the bank's computer, crediting the appropriate customer's account. Customers were given receipts for their cash payments.

The computer automatically notified the mortgage department when accounts were delinquent. Its reports were referred to appellant, who had full authority to direct forbearance on delinquent accounts. When an account was granted forbearance, a payment schedule was established to bring the loan current, and a notation was made on the account so that the customer would not be sent a delinquency letter.

Appellant was responsible for approximately 4,000 accounts until October 23, 1972, when the bank hired another collector to alleviate appellant's heavy work load. The new collector was assigned one half (2,000) of the accounts. Until that time, appellant was the department's only collector, aided by two assistants who turned over all payments to him.

The evidence at trial focused upon seven payments which were made to appellant or his assistants in cash and which were never credited to the homeowners' accounts. The records of these accounts indicated that they were delinquent, and a notation had been made on the accounts that appellant had granted them forbearance. The homeowners had receipts for these payments.

Of the several trial errors alleged by appellant, two merit discussion. These two errors, when taken together, deprived appellant of the fair trial to which he was constitutionally entitled.

The first concerns the trial court's limitation of defense counsel's cross-examination of appellant's former supervisor, Mr. Carrion. Counsel for appellant attempted to elicit from Mr. Carrion testimony indicating which employees had access to the keys to the cabinet in which cash payments were kept until they were converted into cashier's checks. Government objections to this line of questioning were sustained, apparently on the grounds of relevancy.[1]

■ We do not agree. One of the major elements of the government's case was the appellant's opportunity to steal

---

1. The trial judge proceeded to question the witness himself:

    THE COURT: . . . Just give us these people. Don't talk about the rest of them. Who handled money?
    THE WITNESS: That would be Mr. Miranda and his assistants.
    THE COURT: Who were they?
    THE WITNESS: Daisy Juarez and Evelyn Cordova.
    THE COURT: Those three people?
    THE WITNESS: Yes.

    THE COURT: Anybody else?
    THE WITNESS: No, nobody else.
    THE COURT: Let's talk about them only, the rest of the people are totally irrelevant to the rest of this lawsuit.
    MR. STRELLER: I'm trying to establish who had access to the cabinet where the money was kept.
    THE COURT: That does not make any difference, counsel.
    [R.T. 336 337].

the money by virtue of his possession of a key to the cabinet. In view of this, establishing that several employees of the mortgage department also had access to the keys was an important part of appellant's defense. Curtailing cross-examination of prosecution witnesses as to access to the keys thus represented a substantial limitation of his defense. This is particularly true when fellow employees were called by the government to deny the theft, giving rise to inferences damaging to the appellant.

Although it is well established that the scope of cross-examination is within the discretion of the trial court, United States v. Bagsby, 489 F.2d 725 (9th Cir. 1973), it is equally well established that the right of cross-examination is a fundamental one embodied in the Sixth Amendment as the right of an accused to confront the witnesses against him. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1964). We believe that the trial court's restriction upon defense counsel's cross-examination constituted infringement of this fundamental right.

Standing alone, such error as to the proper scope of cross-examination might not be serious enough to warrant reversal. However, added to this was the court's erroneous response to a jury request for evidence pertaining to the division of the accounts at the time a new loan collector was hired. During its deliberations, the jury sent a note to the court asking who had made the division of accounts between appellant and the new loan collector and whether appellant had control before and after the division. The court answered "yes" to the latter question, but mistakenly believing that there was no evidence concerning who divided the accounts, the court did not respond to the first question. Though requested by the defendant, the court declined to have any testimony read back to the jury in this regard.

Subsequently, a note was sent to the court asking for a second time who had made the division of accounts and upon what basis the division was made. The court replied that there was "no evidence" as to either question. The court was incorrect in stating that there was no evidence as to who made the division of the accounts. Mr. Carrion had testified on cross-examination that

> Gerry Raad [the new loan collector] came in in October of 1972 at which time I divided the total loan services for our investors in half. I gave half of the loan service to Mr. Raad and the other half to Mr. Miranda [appellant]. [R.T. 331].

We cannot agree with the government that this error was harmless beyond a reasonable doubt, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). It is apparent that the jury considered the question of who divided the accounts highly significant, so significant that during prolonged deliberations, it asked specifically for this precise information on two occasions. In a case which rested solely upon circumstantial evidence, testimony that someone other than appellant had exercised control over the division of the accounts may very well have been decisive in the jury's consideration of the case. The fact that the testimony was not reread and was, in fact, erroneously represented in response to a specific inquiry compounds the problem further.

Failure to apprise the jury of Mr. Carrion's testimony pertaining to the division of the accounts, when coupled with the court's restriction of cross-examination concerning which employees had access to the keys to the cabinet, seriously limited appellant's opportunity to have all evidence favorable to him considered by the jury. In the circumstances of this case, we would hold that these actions constituted reversible error.

Reversed and remanded.

BARNES, Circuit Judge (dissenting):

I dissent. I find harmless error on the part of the trial judge, in view of the manner in which the case was tried; the objections made and not made by defense counsel; and the evidence produced at the trial.