UNITED STATES of America,
Appellee,

v.

Jerry Lee STANFIELD, Appellant.

No. 74–2855.

United States Court of Appeals,
Ninth Circuit.

July 16, 1975.

Ron Bain (argued), Los Angeles, Cal., for appellant.

Arthur Vance, Asst. U. S. Atty. (argued), Los Angeles, Cal., for appellee.

## OPINION

Before ELY and WRIGHT, Circuit Judges, and McNICHOLS,[*] District Judge.

PER CURIAM:

Jerry Lee Stanfield and a co-defendant were found guilty by a jury of possession of a nonregistered firearm (sawed-off shotgun) as proscribed by 26 U.S.C. § 5861(d). Appeal is taken from the consequent judgment of conviction. We have jurisdiction under 28 U.S.C. § 1291.

The evidence below, while sharply conflicting, was not complicated. Two deputy sheriffs in a patrol car purportedly detecting traffic violations, testified to having pursued a small foreign-manufactured automobile at high speeds prior to stopping it. Just before the vehicle stopped the officers claimed to have observed what appeared to be a weapon passed from a front-seat occupant to one in the rear. Appellant was a passenger in the back seat of the small car.

Upon the car being stopped, the three occupants were ordered to step out. The officers then allegedly observed a portion of a sawed-off shotgun protruding from under the front seat.

The defendants and five persons said to be bystanders, presented evidence tending to negate any police chase and further testified that the officers apparently removed the gun from the trunk of the automobile.

[*] Honorable Ray McNichols, Chief Judge, United States District Court for the District of Idaho, sitting by designation.

The record makes it clear, and the trial judge noted, that the issue of guilt presented a very close question. No matter where the gun was located, proof of appellant's possession as a passenger was only inferential.

In this posture of the record, we examine the various grounds urged on appeal. Appellant's brief separately delineates ten such grounds. In view of the disposition we make of the case, only three of the alleged errors need be considered.

Because of an extended pretrial hearing on a suppression motion, the trial judge was made fully aware of the evidence proposed to be presented by both prosecution and defense. He therefore undertook to deviate from the traditional trial format and announced his intention to make the opening statement to the jury for each side. He announced this novel procedure immediately prior to the commencement of the trial as follows:

"Now instead of letting either side make an opening statement I am going to make the opening statement and tell the jury what the choices are, and tell them in substance that if they believe the gun was found in the trunk of that car that they would have every reason to acquit these defendants; and if they believed that the gun was found in the front part of the car and was handled by these defendants, that there would be a basis for them to consider the guilt of these defendants." [Reporter's Transcript, pp. 230–231.]

Counsel for appellant raised adequate objection to this procedure. In overruling the objection the Court partially explained his motivation.

"I will be very frank with you and tell you that you talk too long. It takes you too long to say what I can say in very short order." [Reporter's Transcript, p. 231.]

The Court thereupon addressed the jury. His entire statement is set out in the margin.[1]

1. "The Court: Ladies and gentlemen of the jury: Ordinarily at this point I would permit the Government's lawyer to make what is known as an opening statement, and then I would permit the defendants' lawyers if they care to do so to make an opening statement. The purpose of an opening statement would be to let them tell you what they think the evidence is going to show in this case, and the fact of making an opening statement is a discretionary matter with the Court. I have indicated to counsel, over their objection, that I was not going to permit—[irrelevant interruption] to permit counsel in this case to make an opening statement today. I am going to make it myself and it is because I am aware of the trend of the evidence in this case and I want to try to simplify it as best I can for you because I *feel that the evidence in this case is going to permit of two choices and that you are going to have to make that choice from the evidence, of course.*

"The evidence will show that two Deputy Sheriffs saw what they considered to be a traffic violation on the part of the driver of a small compact type automobile which had two passengers in it; so there were three persons in this car.

"The driver is not here as a defendant. You need give no concern whatsoever as to why he is not here as a defendant. Your only concern will be the guilt or innocence of the two persons who are before you as defendants, and they will be described to you as the passengers in this automobile.

"These officers will testify in substance that they took up a pursuit after this automobile for what they felt was, first, a speeding violation, and then because of their erratic type of driving or because of what they felt would amount to reckless driving, and eventually they stopped the automobile. They both got out of the automobile and one went to one side and the other went to the other side and told the three persons to get out of the car.

"Just before they stopped the automobile the officers will tell you that they observed through the rear window of this automobile what they construed to be movement on the part of the front seat passenger handing something to the passenger in the back seat.

"They ordered the three men out of the car and they will tell you that they saw at the time the three exited the automobile that which they thought was part of a firearm of some type partially protruding from the rear foot space or rear portion of the passenger automobile; that they then handcuffed the three defendants and placed them under arrest.

"The defendants will tell you that the gun was not found in the inside of the passenger compartment of the automobile; that in fact it

It may be that there could be a case of such unique rarity that a trial court's failure to permit the defense counsel in a criminal case to make an opening statement to the jury could be upheld. No controlling precedent, allowing such a restriction, has been called to our attention, and we are aware of none. The practice of permitting attorneys to make opening statements is a practice long accepted as established and traditional in jury trials. It has the practical purpose of directing the attention of the **jurors** to the nuances of the proposed evidence in such a way as to make the usual piecemeal presentation of testimony more understandable as it is received. Defense counsel in a criminal case is ordinarily more likely than is the trial judge to have a total grasp of the evidence and the inferences to be drawn therefrom. Defendants are entitled to rely on the failure of the evidence of the prosecution and therefore defense counsel may, as an opening statement, content himself with pointing out what facts the Government witnesses will not be able to testify to. We strongly believe that the well established and practical custom of permitting opening statements by counsel at jury trials in criminal cases should be continued in the district courts of this circuit.

There is lurking in this particular case a much more serious and troublesome problem than that presented by the mere determinant by the Court to adopt the unusual course of personally articulating the opening statements. Once the Court undertook to substitute himself for the attorneys in disclosing to the jury the nature of the expected evidence, he had a grave duty to be most circumspect to the end that he not confuse or misdirect the jury. No one doubts but that jurors are very keen to attempt to discover the Court's view of a case. As indicated in the quoted passage (*supra,* Footnote 1), the Court sought to be most fair. However, **a critical** reading of his presentation, with the italicized phrases considered, leaves one with a strong feeling that he put the issue in terms of which set of facts the jury would *believe* and overemphasized that the jury would be required to judge from the two theories of the case "which is right and which is wrong". He then indicated that his purpose in relating the evidence was to put the jury "in a position to look as you hear the evidence for what you will think in your own mind is the *truthful version*". [Emphasis supplied.]

So presented, the correct standard for jury consideration of evidence in a criminal case was obscured. The test is, of course, not which side is more believable, but whether, taking all of the evidence in the case into consideration, guilt as to every essential element of the charge has been proven beyond a reasonable doubt.

Here, the jury, literally following the court lead, could well have listened to all

---

was found by the officers in the trunk of the automobile after the defendants had been arrested and a search of the car was made. So you will have two versions: One will be for you to consider whether the witnesses are telling the truth that the gun was found in the passenger compartment of the automobile, and if you should find that the Government through the officers' testimony has proved beyond a reasonable doubt that there was a movement of some kind from one passenger to the other while the car was still in motion and that when the officers got the people out of the car that the officers did, in fact, see the gun in the front part of the automobile, then there will be a basis for your convicting these defendants.

"On the other hand, *if you believe*—which you would have *every right to believe*—that the officers did not find the gun in the passenger compartment of the automobile but found it in the rear trunk as the defendants will maintain, then you must acquit the defendants because there would be no evidence that the defendants who were merely passengers in the car had knowing possession of that firearm.

"Now those are the two selections, *those are the two alternatives,* those are the two theories of this case that you will eventually be called upon to judge from, to judge *which is right and which is wrong.* And I have put this to you in this fashion, first, in order to try to simplify the case for you and, secondly, in order to let you be in a position to look as you hear the evidence for what you will think in your own mind is the *truthful version."* [Emphasis supplied.] [Reporter's Transcript, pp. 233–236.]

**1126**

of the evidence in this case with the understanding that their duty was to decide the case only by determining which of the two sets of purported facts was true, totally oblivious to the rule that even though the defense evidence might be less believable than that of the Government, it was enough if all of the evidence left them with a reasonable doubt as to guilt.

The Court did, at the close of the case, carefully instruct the jury on the presumption of innocence and the requirement that guilt be proved beyond a reasonable doubt. He likewise accurately defined reasonable. doubt.

■ As a part of the jury instructions the trial judge advised the jury that they were the determiners of fact and that any comments of his could be disregarded. In conjunction with this later instruction, he proceeded to exercise his discretionary right to comment on the evidence. He told the jury:

"I will again give you my comment concerning the evidence in this case. I feel that if you determine beyond a reasonable doubt that these defendants handed the gun, one to the other, just prior to the car being stopped, and that the officers then found the gun under the front seat, there is a basis for the conviction of these defendants.

"On the other hand, *if you are convinced* that the officers found the gun in the trunk of the car instead of in the passenger compartment, you should acquit each defendant, because there would be no evidence that they, as passengers, knew the gun was there." [Emphasis supplied.] [Reporter's Transcript, p. 483.]

Again we find the comment seems to fly in the face of the correct measure of proof in a criminal case. The jury need not have been *convinced* by the evidence of the defendants that the gun was in the trunk of the car. If they entertained a reasonable doubt as to whether or not it was in the trunk the defendants were entitled to a verdict. This repetition of the earlier confusing language served to compound what we view as a serious error.

■ Under the peculiar facts of this case, we are constrained to hold that reversal is dictated.

We turn to the second of the three citations of error which we deem meritorious. In preparing the case for defendants, appointed counsel utilized the services of an investigator to locate potential eye witnesses. Interviews with at least five such witnesses were conducted by the investigator who recorded the voice statements on an electronic device and later had the recordings transcribed into written form. In the evident hope of persuading the United States Attorney to drop the prosecution, copies of the unauthenticated transcripts of the defense witness interviews were provided to Government counsel.

During the course of the trial, several of the persons whose out-of-court interviews had been reduced to written transcripts, as described above, testified on behalf of the defendants. In attempts to impeach some of these witnesses, by way of suggested prior inconsistent statements, portions of the transcript were used. As a technique, Government counsel caused identification numbers to be assigned to each transcript, read passages therefrom to the witness and asked of the witness if the questions and answers so read from the transcript had been asked and answered of and by the witness at a prior time. In some instances the prior statement was admitted, in others the witness professed to lack recollection or denied the accuracy of the statement. No attempt was made by the Government to offer the transcripts into evidence.

Sometime after the jury had retired to deliberate, a message was received by the judge requesting that the transcripts of interviews with the defense witnesses be supplied to the jury. Over the proper objection of defendants, the Court ordered the transcripts admitted into evidence and delivered to the jury room.

■ Certainly a witness may be impeached by proof that on a prior occasion he made a statement inconsistent with his trial testimony. *Benson v. United States,* 402 F.2d 576 (9th Cir. 1968). Here the Government had possession of purported transcripts of prior statements made by defense witnesses. Indeed, the statements were furnished by counsel for defendants. Each witness was asked if he had given a recorded interview to the named investigator at a specific time and place; each answered in the affirmative. Thereafter, specific questions and answers were read from the transcript and the witness asked to confirm or deny. Opportunity for explanation of apparent inconsistencies was afforded. Contrary to appellant's contention, this procedure comported with the accepted practice for impeachment by use of prior inconsistent statements. *United States v. Hibler,* 463 F.2d 455 (9th Cir. 1972).

■ To the extent that the witnesses agreed that the prior statements had been made, no further proof was required; as to those statements not admitted, or specifically denied, the proper method of proof by the Government would have ordinarily required that the investigator to whom the statements had been made be called. *United States v. Hibler, supra.* This was not done. The transcripts themselves having never been signed or otherwise authenticated by the witnesses were not admissible to prove the prior inconsistent statements. Government counsel well understood that the transcripts in the form identified were inadmissible and did not, during the trial, offer them in evidence. We find no error in the manner of use of the transcripts for cross-examination purposes.

Unfortunately, the matter was not to come to rest in this posture. The curiosity of the jury was understandably aroused and the jurors desired to read the entire transcripts. As indicated, the judge admitted the exhibits and permitted them to be considered by the jury in their entirety.

The transcripts as presented were, of course, not admissible as substantive evidence of the facts related therein. *Bridges v. Wixon,* 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945). Nor, as we have above indicated, were they admissible as evidence to prove the inconsistent statements. The admission of the transcripts into evidence was error. That the error was prejudicial cannot be doubted.

■ Setting aside the unusual procedure of admitting evidence, not previously offered, after the closing arguments and while the jury is deliberating, other factors demonstrate the prejudicial nature of the transcripts in the form admitted. Only portions of the transcripts had been read to the respective witnesses. The portions unread, but submitted ultimately to the jury, contained unexplained inconsistencies between statements of various witnesses. Totally inadmissible conjectures or opinions as to what facts were known or unknown to other defense witnesses were likewise to be found in various of the admitted transcripts. In a case such as the one before us, where the outcome hinged on the credibility of the various witnesses, permitting this raw information to go to the jury must be said to have operated to the prejudice of the appellant.

Finally, appellant strenuously urges that the Court below prejudicially limited cross-examination of Government witnesses. Stanfield and his co-defendants were separately represented by counsel. When the first police officer was called, counsel for co-defendant was permitted to cross-examine first. When he had finished, appellant's counsel cross-examined for some fifteen or twenty minutes before the evening recess. Much of the area covered by counsel for Stanfield was repetitious of that covered by the other defense counsel and dealt at length with details of the alleged chase by the police of the car in which the defendants were passengers. Ordinarily the relevance of such evidence might be thought to be questionable and subject to reasonable limitation by the trial judge. Ap-

pellant accepts this general rule but makes the point that here the actual happening of a police chase was a hotly disputed issue and that there was a serious credibility question. The officers had made an official written report which appeared to vary from their oral testimony. Appellant's counsel desired to examine as to these apparent discrepancies in detail. The colloquy between. Court and counsel where cross-examination was curtailed is set out in the margin.[2]

The scope of cross-examination is necessarily left to the considerate discretion of the trial judge and that discretion is frequently and properly exercised to avoid extensive and time-wasting exploration of collateral matters. *Enciso v. United States,* 370 F.2d 749 (9th Cir. 1967). Such limitation of the scope and extent of cross-examination will not result in reversal in criminal cases unless it is made clear that the defendant has been denied his constitutional right to confrontation. *United States v. Haili,* 443 F.2d 1295 (9th Cir. 1971). At the same time the right of cross-examination remains as a fundamental tool to insure the full play of the Sixth Amendment right to confront the witnesses against him. *United States v. Miranda,* 510 F.2d 385 (9th Cir. 1975). Wide latitude should ordinarily be afforded where there exists a serious issue of the credibility of the witness. *Harris v. United States,* 371 F.2d 365 (9th Cir. 1967).

Since this case must be remanded for a new trial on other grounds, we feel it sufficient to note that, under the facts disclosed by the record before us, the limitation on cross-examination of the

2. "The Court: I have just indicated to counsel that I feel that counsel is engaging in too great a detailed cross-examination on an unimportant part of the testimony in this case, that is the early part of the chase that eventually led to the stopping of the vehicle, and I have asked counsel to shorten his cross-examination on that part of the case and to get down to the place where the car was stopped and the conditions under which it was stopped and the search that was made. He wanted to comment.

"Mr. Bain: Yes. I believe I only spent about 15 or 20 minutes on cross-examination yesterday, which is a pretty short period of cross-examination.

"The Court: But you must remember that Mr. Brennan had already gone over the field very thoroughly.

"Mr. Bain: But I think I took a different approach than he did. And secondly, I agree with you that as far as the ultimate facts of the case that aspect is not that relevant, but it certainly is relevant on the question of credibility, especially when the testimony varies completely.

"The Court: Yes, but you are attempting to impeach the witness on little bits of things, and we can't be here all week on those little bits of things, whether he was 10 feet away or eight and a half feet away, so let's get down to business and get—

"Mr. Bain: But he admitted to making statements, statements—

"The Court: What we are talking about is a joint record made by two officers. We know that, and he is talking about what he and his fellow officer saw. So, let's get at the practicalities of this thing, and it ought to be a short trial. You gentlemen said you had other trials to do, and I wonder why we don't get on with this thing and shorten it up, get down to the meat of the issues.

"Mr. Bain: Because I believe it's important on the issue of credibility.

"The Court: Well, that is true, and I have given you an opportunity to show that they have made a mistake here and there, but we can't dwell all week on it, so let's get right on. I don't want to be on your backs before this jury, urging you to move on to something else. So please understand this to be my feeling that with this witness and with the next witness, too, who is going to be his partner, we'll be going over the same testimony, that we are not going to go over all of this trivia with a fine tooth comb. Let's get down to the place where the issues are.

"Mr. Bain: I'm not quite sure on the Court's ruling. Are you asking me not to go back to questioning on the pursuit?

"The Court: That is correct. You have already done ample of it.

"Mr. Bain: Am I prevented now from going back into that area?

"The Court: Yes.

"Mr. Bain: Can I make a motion?

"The Court: Yes.

"Mr. Bain: I make a motion for two things: One, to have the testimony of Officer Gallatin stricken for lack of proper cross-examination. Two, make a motion for mistrial on the grounds there was lack of proper cross-examination.

"The Court: Both motions are denied." [Reporter's Transcript, pp. 296–298.]

police officers appears to have been unduly restrictive.

The remaining objections to rulings below can be briefly disposed of.

The motion for suppression of evidence was properly denied.

The motions to acquit for insufficiency of the evidence were not well taken.

The disposition we make of the case cures any potential error based on the denial of a new trial on grounds of newly discovered evidence.

The cause is reversed and remanded for a new trial.