UNITED STATES of America, Plaintiff–Appellee,

v.

Yukio URAMOTO, Defendant–Appellant.

No. 79–1073.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 17, 1980.

Decided Nov. 5, 1980.

---

* Honorable Philip C. Wilkins, Chief United States District Judge for the Eastern District of California, sitting by designation.

Terry Amdur, Pasadena, Cal., for defendant–appellant.

Mark S. Geraghty, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff–appellee.

Before PREGERSON, FERGUSON and NORRIS, Circuit Judges.

FERGUSON, Circuit Judge:

The only issue raised in this appeal is whether the district court erred in restricting cross–examination of two Government witnesses. We hold that it did and reverse.

Defendant Uramoto was convicted of conspiracy to import heroin in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 963. At trial, he admitted receiving money from agents of the Drug Enforcement Administration ("DEA") which he subsequently wired to his friend and co–defendant, Lamthong Sudthisa–Ard. Uramoto's defense was that he initially collected the money as a favor for Lamthong without knowledge of Lamthong's illicit purpose and that he continued his involvement after learning about the heroin only because he feared reprisals from Michael Smelser, the paid Government informant who purchased the heroin.

It is undisputed that in the course of his transactions with Uramoto, Smelser represented himself as a front man for the Mafia. Before trial, the Government revealed that Smelser had previously threatened other individuals while acting under his Mafia cover. The Government further disclosed that the DEA had become aware of these threats and had instructed Smelser to stop making them.[1]

The court below ruled that in cross–examining Smelser and a DEA agent, Uramoto could fully explore any threats Smelser had made against him, but could not bring up threats Smelser had made to individuals who were not parties to this case. Uramoto argues that the court's refusal to allow questioning regarding threats to others impermissibly limited cross–examination, thereby denying him his sixth amendment right to confront adverse witnesses.

I

The transaction involved in this case began with a telephone conversation between Smelser and defendant Prasert Pao–Inthara. Prasert referred Smelser to Lamthong. Many of the conversations between Lamthong and Smelser concerning the purchase of heroin were recorded and played for the jury.

On July 26, 1978, Lamthong told Smelser that payment for the heroin should be made to Uramoto. Smelser paid a first installment on August 25 and the balance on August 28.

The DEA videotaped this second payment; the tape was played before the jury. The jury also heard recordings of a number of Smelser's conversations with Uramoto. Included among these was a telephone call that Smelser made to Uramoto at 3:00 a. m. to ask for Lamthong's telephone number in Bangkok. During this call, Smelser commented that his associates were "not happy about the proposed shipment" and that he did not "like to be upset with people."

Smelser was the Government's principal witness and was extensively cross–examined by the defendant except for the restrictions challenged in this appeal. Uramoto did not take the stand.

II

The Government argues that any threats Smelser made prior to his involvement with the defendant are irrelevant. On cross–examination, Smelser testified that he had been explicitly instructed "not to throw any weight around," and he flatly denied that he threatened Uramoto or any of the other defendants. The jury was

---

1. The record is silent as to the nature of these threats and as to whether Smelser made only a single threat or whether such threats formed a regular pattern of conduct. The record suggests that the DEA was aware of only a single incident.

given the opportunity to observe Smelser's demeanor and to listen to the tape of the 3:00 a. m. telephone call. The Government argues that Uramoto had a full and fair opportunity to test Smelser's credibility through cross–examination and to play tape recordings that would show directly whether Uramoto acted because of Smelser's threats. In light of these opportunities and the broad discretion given trial judges to restrict the scope of cross–examination and prevent time–wasting exploration of collateral matters, *Chipman v. Mercer*, 628 F.2d 528, 530 (9th Cir. 1980); *Skinner v. Cardwell*, 564 F.2d 1381, 1388–89 (9th Cir. 1977), *cert. denied*, 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978), the Government urges affirmance.

The only issue at trial was whether Uramoto acted because of threats. We therefore reject the Government's argument that evidence of threats to others similarly situated was peripheral. The jury could have given considerably less weight to Smelser's denial that he threatened Uramoto if it knew that he had repeatedly made threats to others in Uramoto's position. Nor do the previous threats become irrelevant by virtue of the tape recordings of the threatening conversations. Tape recordings tending to show that Smelser did not threaten Uramoto do not render irrelevant evidence tending to show that he did. Further, Smelser admitted that he alone had control over which conversations were tape–recorded, and the record shows that some of his conversations with Uramoto were not recorded. Moreover, portions of the recorded conversations were inaudible. Accordingly, the absence of threats from those tapes cannot prove that no threats were made.

Evidence of prior threats was therefore relevant.

As we emphasized in *United States v. Harris*, 501 F.2d 1, 8 (9th Cir. 1974), "[a]lthough we recognize that the trial judge has wide latitude in the control of cross–examination, 'this principle cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony.' *Gordon v. United States*, 344 U.S. 414, [73 S.Ct. 369, 97 L.Ed. 447] ...." The record reveals that Uramoto was prevented from pursuing a line of questioning that was certainly relevant and that focused on the only issue in dispute. We recognize that Uramoto had other, and perhaps more direct, opportunities to show the jury that Smelser had threatened him; nonetheless, we cannot conclude that he was given a fair trial when he was denied the chance on cross–examination to show he was threatened.[2]

We have repeatedly insisted that wide latitude be given to defendants in their cross–examination of key prosecution witnesses, *see United States v. Bleckner*, 601 F.2d 382, 385 (9th Cir. 1979); *United States v. Stanfield*, 521 F.2d 1122, 1128 (9th Cir. 1975), especially when the witness is a professional informant, *United States v. Alvarez–Lopez*, 559 F.2d 1155, 1160 (9th Cir. 1977); *United States v. Harris*, 501 F.2d 1, 8 (9th Cir. 1974). In *United States v. Salsedo*, 607 F.2d 318, 321 (9th Cir. 1979), we embraced the rule that cross–examination of a DEA informant must extend not only to his work in the immediate case, but also to his previous work with the DEA. *See United States v. Leja*, 568 F.2d 493 (6th Cir. 1977) (reversing conviction for failure to allow such cross–examination).

---

**2.** The instant case concerns cross–examination. We would have a different case if Uramoto wanted to introduce his own witnesses to show Smelser's past behavior. That course might have consumed an enormous amount of time and might have unduly focused the jury's attention on Smelser's behavior in other cases. Limitations on such testimony might have been within the trial court's discretion under Federal Rule of Evidence 403.

In addition, were Uramoto to offer such direct evidence concerning Smelser's previous threats, Federal Rule of Evidence 404(b) would govern. *See United States v. Longoria*, 624 F.2d 66, 68–69 (9th Cir. 1980). Evidence of prior threats to others would then be either admissible as probative of a "common scheme," *see United States v. Brashier*, 548 F.2d 1315, 1326 (9th Cir. 1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977), or inadmissible as showing only a predisposition to threaten, *see United States v. Bettencourt*, 614 F.2d 214, 218 (9th Cir. 1980).

We have found cross–examination impermissibly limited both when the defendant was not given adequate scope to impeach a witness's credibility, *see, e.g., Burr v. Sullivan,* 618 F.2d 583, 587–88 (9th Cir. 1980) (arson defendant has right to cross–examine juvenile witnesses concerning their admission of 100 burglaries to show their bias), and when matters clearly relevant to crucial issues were excluded, *see, e.g., United States v. McLister,* 608 F.2d 785, 788 (9th Cir. 1979) (cross–examination of detective needed to counter possible misapprehension by jury); *United States v. Miranda,* 510 F.2d 385, 387 (9th Cir. 1975) (cross–examination inappropriately limited when defense not allowed to ask if others besides defendant had access to cabinet in which missing money was kept). In the instant case, the excluded cross–examination could have colored the jury's perception of Smelser's credibility. In addition, it concerned the heart of Uramoto's defense. We therefore conclude that its exclusion was error. In reaching this conclusion, we are influenced by the fact that the only issue in the case was whether Uramoto acted out of fear and by the fact that the Government concedes that the paid informant has a history of threatening those with whom he came in contact.

### III

Although the Government's case against Uramoto is strong, the harmless error doctrine is inapplicable. The Supreme Court has declared repeatedly that a denial of the right of cross–examination is "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 749, 19 L.Ed.2d 956 (1968); *see Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Deprivation of the right to a full and robust cross–examination of a paid Government informant on a matter that is likely to cast light on what is concededly the only issue in the case cannot be cured by the absence of any specific showing of prejudice. *See Chipman v. Mercer, supra,* at 532; *but see United States v. Friedman,* 593 F.2d 109, 121 (9th Cir. 1979).

In reversing and remanding for a new trial, we express no opinion on the burden Uramoto must carry to prevail on the theory that he acted out of fear.

REVERSED and REMANDED.