**UNITED STATES of America, Appellee,**

v.

**Ronald SCHEIBEL,**
**Defendant–Appellant.**

**No. 631, Docket 88–1255.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 10, 1989.

Decided March 16, 1989.

Robert M. Casale, Branford, Conn. (Judith Erba, Branford, Conn., Tara L. Knight, Law Student Intern, Branford, Conn., of counsel), for defendant-appellant.

Frank J. Marine, U.S. Dept. of Justice, Washington, D.C. (Stanley A. Twardy, Jr., U.S. Atty. Dist. Conn., New Haven, Conn., John H. Durham, Sp. Atty., U.S. Dept. of Justice, New Haven, Conn., of counsel), for appellee.

Before VAN GRAAFEILAND, WINTER and MINER, Circuit Judges.

WINTER, Circuit Judge:

Appellant Ronald Scheibel appeals from his conviction in the District of Connecticut for possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) (1982). Scheibel claims that he was prejudiced by the district court's admission of allegedly false exculpatory evidence that was not sufficiently connected to him. Scheibel also claims that the district court erred in the limiting instructions and charge to the jury concerning the challenged evidence. We affirm.

## BACKGROUND

At approximately 10:00 a.m. on December 27, 1986, Scheibel was clocked by state police officer James Brezniak as driving at 75 m.p.h. while heading eastbound on Interstate 84 ("I-84") in Tolland, Connecticut. Brezniak activated the police car's flashing lights and began to pursue Scheibel. Scheibel increased his speed to over 100 m.p.h., and Brezniak then contacted other officers, including one in an airplane. The officer in the airplane thereafter monitored Scheibel's movements.

During the chase, Scheibel exited I-84 onto Route 89, drove 500 feet, exited Route 89 and began driving westbound on Frontage Road, a hilly, two-lane road approximately one and one-half miles long that ends in a cul-de-sac. Although Brezniak momentarily lost sight of Scheibel when Scheibel exited I-84, the police officer in the airplane maintained continuous observation of the car and kept Brezniak aware of Scheibel's position. While on Frontage Road, Scheibel continued to drive at approximately 90 m.p.h. Scheibel slowed considerably at a dip in the road, however, and then accelerated again to approximately 90 m.p.h. Scheibel was ultimately cornered by the police when he reached the cul-de-sac at the end of Frontage Road. When asked why he had refused to pull over, Scheibel stated that his driving license was under suspension and that he was afraid to stop. The police took Scheibel to the police barracks, returning along Frontage Road. A state trooper remained with Scheibel's car until it was towed from the cul-de-sac. No other cars were encountered on Frontage Road from the time the pursuit began until the time Scheibel's car was towed. Scheibel was charged with operating a motor vehicle without a license, speeding and engaging an officer in pursuit. The police seized $560.56 in cash from his wallet and an additional $2,000.00 in cash from a compartment in the driver's door of his car.

The drug charges at issue in the present case arose from the following events. Between 12:30 and 1:30 p.m. on the day of the chase and Scheibel's arrest, one Frank Plazek, an owner of land on Frontage Road, found a canvas bag near the dip in Frontage Road where Scheibel had slowed his car. Plazek found the bag while checking his property for litter and trespassers, something he did every day. Plazek had checked the same area the day before and earlier the same morning but had not seen the bag.

Plazek opened the bag and found: (i) two ziplock plastic bags containing white powder; (ii) a purple cloth Crown Royal bag; (iii) a manila envelope; and (iv) a note printed in capital letters stating COCA LEAF & INCENSE PROCAINE TETRACAINE CAFFEINE, CITRIC ACID.

Plazek's wife then called the police. Examination revealed that the white powder in one of the two ziplock bags consisted of 76.58 grams of 39% pure cocaine with a wholesale value of between $3,200 and $4,800. The powder found in the second bag consisted of 669.6 grams of 85.3% pure cocaine with a wholesale value of between $18,000 and $22,000. White cat hairs were found on the Crown Royal bag. Evidence at trial indicated that Scheibel owned a black and white kitten. In addition, expert testimony at Scheibel's trial identified Scheibel as the author of the note.

On January 18, 1988, six days after the selection of the jury for Scheibel's drug trial but just before the trial was to begin, Plazek, during his routine check of his property, discovered a second bag in plain view on top of snow in approximately the same location as the first bag. Plazek informed the police and gave them the bag. Inside the second bag the police found: (i) a manila envelope; (ii) a clear ziplock bag containing 111 grams of 84.75% pure cocaine with a wholesale value of between $2,800 and $4,400; and (iii) a three-by-five inch notecard which had the following note written on it in capital letters:

GEORGE,
LET'S CHANGE DROP. WE LOST PKG. LAST WEEK. THATS 3 TOO MANY. THINGS ARE SLOW AFTER NEW YEARS ... ALWAYS
BILL.

At trial, the handwriting expert was unable to determine the authorship of the note. It was, however, established that thirty-two white cat hairs were found on the cloth bag.

At Scheibel's trial, Plazek testified without objection to the circumstances of his finding the second bag and to his observations of its contents. When the government attempted to introduce the bag and its contents as physical exhibits, however, the defense objected on the ground that they were irrelevant. The prosecution's theory of admission was that the bag was an attempt by Scheibel to fabricate exculpatory evidence to the effect that others used Plazek's land as a drop for drugs. Such evidence would of course demonstrate Scheibel's consciousness of guilt. Colloquy between the court and counsel focused on whether the proposed exhibits could be connected to Scheibel. The district court overruled the objection and admitted the evidence.

The defense also objected to the district court's limiting instruction regarding the contested evidence. That instruction stated in pertinent part:

All right. The point is that you may consider all of that in whatever perspective and whatever relationship to the rest of the evidence you find to be appropriate. But the important thing at this point is for me to tell you that you must not consider the fact that there was cocaine in the bag in January of 1988 to be a basis for finding the defendant guilty of possession of the cocaine in December of 1986.

*He's not charged in this case with possession of the cocaine in 1988.* He is charged with possession of the cocaine in December of 1986. So that whatever the significance that you attribute in your performing your function as judges of the facts to what took place in 1986 and 1988, as it may bear upon what took place in 1986, you may do that with sole exception that you may not find that the defendant was guilty of the possession in

1986 because the substance found in the bag in '88 was cocaine, because he's not charged with possession in 1988 with the cocaine that was found in the bag that is going to be marked now as a full exhibit 14.

(emphasis added). The defense claimed that the emphasized portion of the instruction implied that Scheibel was charged in a second criminal action with possession of the cocaine found in 1988. The district court declined to revise its instruction. Finally, the defense objected to the district court's charge to the jury concerning the charged evidence. The charge stated, in pertinent part, that:

> If you find that an attempt to fabricate evidence has been made by the defendant after a crime has been committed, such an attempt would not be sufficient in itself to establish guilt. However, you may consider evidence of such an attempt, if you find that one was made, along with the other evidence in the case in determining the question of guilt or innocence. Whether or not attempts at fabrication of evidence show consciousness of guilt, and the significance to any such attempt, are matters for the jury to determine.

The defense objected on the ground that "there [was] no evidence ... in [the] case which warrant[ed] the giving of that instruction." The district court overruled this objection as well.

## DISCUSSION

■ Regarding the admission of evidence concerning the discovery of the second bag of cocaine in January 1988, we believe that Scheibel failed to preserve this claim. Plazek was allowed to testify without objection as to the circumstances surrounding the discovery of the second bag and its contents—a manila envelope inside of which was "a Ziplock-type of bag, a clear plastic bag with a white substance in it." Only when the prosecution sought to introduce the envelope (followed by the bag, the note and the cocaine) as a physical exhibit was an objection made on relevance grounds. Furthermore, the objection was limited to admission of the physical evidence, no request being made to strike

Plazek's testimony concerning the second bag. Even if the objection had been granted, therefore, the jury would still have had before it evidence that another canvas bag with a white substance in it had been found in the same place on Plazek's property.

We perceive no reason to believe that the failure to object to Plazek's testimony was the product of inadvertence, although that would not alter our conclusion. The fact that another bag of cocaine had been found was helpful to Scheibel's defense because, without more, it suggested that someone else was using the Plazek property as a drug drop. The physical evidence, however, was unnecessary to plant this thought in the jury's mind, and its admission also created a risk that the second bag might somehow be tied to Scheibel, as indeed the government sought to do through the cat hairs and the chatty note seemingly between friendly drug dealers. Had the objections to the physical evidence been sustained, therefore, Scheibel would have had the benefit of the jury knowing about Plazek's finding the second bag but remaining ignorant of damaging details. If the objections were overruled, then there was the hope that a claim of error might be successful on appeal.

■ Scheibel's belated objection is thus insufficient to preserve the claim for appeal. We emphasize that our decision is not based solely on temporal grounds. Instead, we believe that a litigant who allows favorable portions of an incident to be described to a jury may not cut off inquiry just before unfavorable portions are about to be explored. Scheibel makes no claim that Plazek's testimony was admissible independent of the physical evidence, and, having gained the benefit of one, he must bear the burden of the other.

■ The only issue before us that concerns the second bag of cocaine, therefore, is whether its admission was plain error under Rule 52(b), Fed.R.Crim.P. Such error of course must be obvious and affect substantial rights. *Id.* While we believe that the district court would have been within its discretion in excluding the evidence upon a proper objection, we cannot say it was error, much less plain error, to admit it. It is difficult to reach any conclu-

sion other than that the second bag of cocaine was planted by someone with an interest in the present case. Plazek checked his property daily and had found only the two bags in question. Moreover, the note borders on the ridiculous. Drug dealers presumably do not wait for three packages of cocaine to be picked up by unknown third parties to change a drop site. Nor do they discuss changing a drop site known by others to be a source of drugs by leaving notes at that very site, much less notes using first names and discussing the seasonality of the drug trade. The problem with admitting the second bag, of course, is that the evidence of Scheibel's knowledge of the second bag is highly circumstantial and the prejudice of associating him with another bag of cocaine while awaiting trial is high. Nevertheless, this merely makes the issue a close question and not plain error.

We now address Scheibel's claim that the district court's limiting instruction to the jury concerning the second bag of cocaine implied that Scheibel was the subject of a second drug charge. The sole basis for this claim is the district court's use of the phrase, "[h]e's not charged *in this case* with possession of the cocaine in 1988." In contrast to the relaxed reaction to Plazek's testimony about the second bag, defense counsel's reaction here was excessively picky. "[W]hen a portion of a jury instruction is assigned as error, the reviewing court must look to the instructions as a whole." *Simpson v. Norwesco, Inc.,* 583 F.2d 1007, 1013 (8th Cir.1978) (citations omitted). Read as a whole, the district court's instruction to the jury in no way suggested that Scheibel was the subject of a second drug charge concerning the cocaine discovered in January 1988. The district court's limiting instructions regarding the contested evidence were therefore proper.

Finally, we examine Scheibel's challenge to the district court's charge to the jury. Scheibel claims that the district court erred by charging the jury that, in determining Scheibel's guilt or innocence, they could consider, if they so found, that Scheibel fabricated exculpatory evidence. We disagree. A defendant's fabrication of exculpatory evidence cannot be the sole basis for a conviction. In *United States v. Di Stefano,* 555 F.2d 1094 (2d Cir.1977), we unequivocally stated that: "[f]alse exculpatory statements are not admissible as evidence of guilt, but rather as evidence of consciousness of guilt." *Id.* at 1104 (citations omitted). *See also United States v. Morales,* 577 F.2d 769, 772–73 (2d Cir.1978). The charge in question, however, expressly stated that, "evidence [of fabrication of exculpatory evidence] would not be sufficient in itself to establish guilt." Instead, the challenged charge cautioned the jury to consider fabrication of exculpatory evidence only as an indication of Scheibel's consciousness of guilt, which might, in turn, be considered along with other evidence in determining Scheibel's guilt or innocence. We have repeatedly approved such instructions. *See, e.g., United States v. Rucker,* 586 F.2d 899, 904 (2d Cir.1978); *cf. United States v. Johnson,* 513 F.2d 819, 824 (2d Cir.1975); *United States v. Parness,* 503 F.2d 430, 438 (2d Cir.1974), *cert. denied,* 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975).

AFFIRMED.