904 F.2d 37
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert SINGLETON, Defendant-Appellant.
 No. 89-1861.
 United States Court of Appeals, Sixth Circuit.
 May 31, 1990.
 
 Before WELLFORD and BOGGS, Circuit Judges, and DAVID D. DOWD,* Jr., District Judge.
 PER CURIAM.
 
 
 1
 Defendant, Robert Singleton, appeals his conviction on five counts of wire fraud in violation of 18 U.S.C. Sec. 1343 and one count of interstate transportation of money acquired by fraud in violation of 18 U.S.C. Sec. 2314. Defendant alleges: (1) that he was entitled to an "informer" instruction with respect to testimony of his codefendant; (2) that the district court illegally shifted the burden of proof; (3) that the district court erred in instructing the jury that it could consider defendant's attempts to suppress or fabricate evidence in determining guilt or innocence; and (4) that the government's conduct at trial violated due process. We find that none of the alleged errors prejudiced the outcome of the trial and affirm the conviction.
 
 I.
 
 2
 Defendant and a co-defendant, Lawrence Smith, were indicted on eight counts of wire fraud and one count of interstate transportation of money acquired by fraud. The indictment charged that defendant and Smith participated in a scheme to defraud individuals and collected advance fees totalling some $200,000 for processing promised loans that they never provided nor intended to provide.
 
 
 3
 The evidence at trial showed that defendant and Smith concocted the scheme in late summer or early fall of 1985, and thereafter contacted persons who were interested in borrowing large sums of money. Defendant advised these potential borrowers that loans were available, but that it was necessary for the borrowers to deposit an advance fee that ranged from $10,000 to $50,000, depending on the size of the loan sought. Defendant promised that the advance fee would be refunded within seventy-two hours of a loan not being funded, and in any event within forty-five days. Defendant also provided assurances to most of the victims that he would keep the deposit money in a special account not to be used until the requested loans had been obtained.
 
 
 4
 Defendant induced one victim, Michael Lewis, to advance approximately $55,000 by misrepresenting that the loan that Lewis sought was being processed by a certain bank in Iowa. Defendant then sent Lewis forged documents purporting to be from that bank and purporting to show that the loan was in progress. The majority of the victims sent their deposits to an account controlled by defendant. None of the people who sent an advance fee, however, received a loan, and by April of 1986, several of them began to pressure defendant and Smith to refund their deposits. The deposits were never refunded.
 
 
 5
 To conceal the fraud, defendant provided one of the victims and the FBI with false bank documents and false Western Union documents that indicated that Smith had received the money. In addition, defendant gave a statement to an FBI agent in which he attempted to fix all the blame for the disappearance of the money on his codefendant Smith.
 
 
 6
 The jury found defendant guilty on five counts of wire fraud and on one count of interstate transportation of money acquired by fraud, but acquitted defendant on three counts. The district judge sentenced defendant to five years imprisonment on one count and suspended sentences and five years probation on the remaining counts.
 
 II.
 A.
 
 7
 Defendant claims first that the court committed reversible error when it refused his request for an instruction that codefendant Smith was an informer whose testimony should be examined and weighed by the jury with great care.[1] The government takes the position that the district court gave a proper instruction on Smith's role, and the testimony of Smith was corroborated. We agree with the government that an informant instruction was unnecessary under the circumstances.
 
 
 8
 A court is not obliged to instruct the jury that an individual is an informant when his testimony is corroborated materially by other witnesses. United States v. Vinson, 606 F.2d 149, 154 & n. 9 (6th Cir.1979), cert. denied, 444 U.S. 1074 (1980). An accomplice instruction has, for all practical purposes, the same cautionary effect as an informant instruction. Id.; see also United States v. Morgan, 555 F.2d 238, 242-43 (9th Cir.1977) (holding that informant instruction not necessary when accomplice instruction given and that accomplices who testify under grant of immunity do not become informants). Without deciding the issue of whether Smith's plea agreement made him an informant, a review of the government's evidence indicates that defendant's conviction did not depend upon the uncorroborated testimony of Smith. The jury was cautioned to consider Smith's testimony with great care. We find, accordingly, no reversible error in the trial judge's refusal to give defendant's requested instruction.
 
 B.
 
 9
 Second, defendant argues that the district court improperly shifted the burden of proof. Upon dismissing the jury for a recess at the close of the evidence, the trial judge informed the jury about remaining trial procedures. He explained:
 
 
 10
 Doubtlessly, the Government will argue that the evidence will support its contention that the Defendant is guilty of all counts which have been set forth in the indictment.
 
 
 11
 Undoubtedly, the Defendant will argue that he is innocent of all of the charges and that you should return a verdict of not guilty on each and every count. It will be up to you to make that decision as to whether the Government is correct in whole or in part or, whether the Defendant is correct in whole or in part. That is your exclusive duty and responsibility.
 
 
 12
 As I mentioned to you before, the Government who has the burden will speak with you first; then the Defendant and then the Government.
 
 
 13
 Joint Appendix 298-99 (emphasis added). Relying on United States v. Stanfield, 521 F.2d 1122 (9th Cir.1975), defendant argues that the above language required him to prove his theories of innocence.
 
 
 14
 In Stanfield, the trial judge made unusual and unorthodox opening statements for both sides in which he informed the jury that they would be choosing between two alternatives. The trial judge in Stanfield compounded the problem by instructing the jury that they should acquit if they were "convinced" that defendant's theory of the case was correct. Id. at 1126. Although the trial judge also instructed the jury with regard to the reasonable doubt standard, the court held that the "peculiar facts" of the case dictated reversal. Id.
 
 
 15
 The statement at issue in this case was a simple explanation of the jury's duty to resolve credibility issues and did not create the impression that the jury's duty was merely to choose between two alternatives, without applying the reasonable doubt standard. See United States v. Calabrese, 645 F.2d 1379, 1388 (10th Cir.), cert. denied, 451 U.S. 1018 (1981). Any potential confusion that this language may have caused was clearly rectified by the warning following the instruction that the government continued to have the burden of proof. More than twenty other references to the government's burden throughout the trial and in the jury instructions suggests that this one statement did not prejudice defendant. See Cupp v. Naughten, 414 U.S. 141, 146-47 (1973) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.")
 
 C.
 
 16
 Next, defendant contends that the district court's instruction on suppression or fabrication of evidence as consciousness of guilt constitutes reversible error.[2] Defendant suggests (1) that the instruction was not warranted by the evidence and (2) that the instruction improperly allowed the jury to rely on the evidence of fabrication as circumstantial proof of guilt, rather than proof of consciousness of guilt. In view of the evidence that defendant provided false Western Union receipts and bank documents to John Dysart, one of the victims of the scheme, as well as to the FBI, we find that the charge in question was appropriate. See United States v. Rucker, 586 F.2d 899, 904 (2d Cir.1978) (trial court did not err in delivering a similar instruction where supported by adequate evidence in the record); see also United States v. Scheibel, 870 F.2d 818, 822 (2d Cir.1989). Because the instruction sufficiently cautioned the jury to consider suppression of evidence only as an indication of defendant's consciousness of guilt, which might, together with other evidence, be considered in determining defendant's guilt or innocence, we find that the trial court committed no error in this respect. Scheibel, 870 F.2d at 822.
 
 D.
 
 17
 Finally, defendant argues that the government's conduct at trial denied him the right of due process of law. Specifically, defendant contends: (1) that the government mischaracterized codefendant Smith's plea agreement; (2) that the government relied on perjured testimony; (3) that counsel for the government testified during closing argument; and (4) that the government inflamed the passions of the jury by questioning one of the victims of the scheme about the heart attack he suffered. We have examined the record with respect to each of these contentions. The nature of Smith's plea agreement was adequately developed during trial and the jury made aware of the circumstances of Smith's admission of guilt. Singleton's mere assertion and argument about the truth or falsity of this testimony was a jury matter. Furthermore, we find no prosecutorial misconduct in this record.
 
 
 18
 For the reasons stated, we AFFIRM defendant's conviction and sentence in all respects.
 
 
 
 *
 THE HONORABLE DAVID D. DOWD, JR., Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The district court instructed the jury that an accomplice, such as Smith, is one who unites with another in the commission of a crime and advised the jury that it should receive the testimony of an accomplice with caution and consider it with great care. The instruction, as taken from Devitt & Blackmar, Federal Jury Practice and Instructions, Sec. 17.05, states:
 An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of one who asserts, by his testimony, that he is an accomplice may be received in evidence and considered by the jury, even though not corroborated by other evidence, and given such weight as the jury feels it should have. The jury, however, should keep an open mind that such testimony is always to be received with caution and considered with great care.
 
 
 [2]
 The court instructed the jury:
 An attempt to suppress or fabricate evidence after the crime has been committed is not sufficient to establish guilt. You may consider evidence of such an attempt, however, along with the other evidence in the case, in determining guilt or innocence. Whether or not attempts at fabrication or suppression of evidence shows consciousness of guilt, and the significance to be attached to any such attempt, are issues for the jury to determine.